# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------

| | |
|---|---|
| LIHUA GAN, PU GAO, YASHUI LI, RUIMIN LIU, NA TANG, KAIQIN WANG, XINGQI WANG, WEISHAN WEN, XINGQIN WEN, DONG YAN, SIYUN YAN, HAODING YANG, AND LIJUAN YANG | Case No. 24-cv-04234 (RER) (JAM) |
| *Plaintiffs* <br> v. | **NOTICE OF APPEAL** |
| GSUIG REAL ESTATE MEMBER LLC, WEBSTER BANK, N.A. F/K/A STERLING NATIONAL BANK, EMPIRE OUTLET MANAGEMENT, LLC, BFC PARTNERS, LLC | |
| *Defendants* | |

**PLEASE TAKE NOTICE** that Plaintiffs Lihua Gan, Pu Gao, Yashui Li, Ruimin Liu, Na Tang, Kaiqin Wang, Xingqi Wang, Weishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Haoding Yang, and Lijuan Yang, hereby appeal to the United States Court of Appeals for the 2nd Circuit from each and every part of the *Memorandum and Order* entered August 21, 2025 (the "Order") (ECF No. 53) dismissing Plaintiffs' claims. A copy of the Order is attached hereto as Exhibit 1. Counsel hereby certifies that the appeal is not taken for the purpose of delay.

1

Dated: New York, New York
         September 19, 2025

                                        Respectfully submitted,

                                        REID & WISE, LLC


                                        By: /s/ Matthew Livingston

                                        Matthew Sava
                                        Matthew Livingston
                                        REID & WISE LLC
                                        One Penn Plaza, Suite 2015
                                        New York, New York 10119
                                        Tel: (212) 858-9968
                                         sava@reidwise.com
                                         mlivingston@reidwise.com

                                        *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LIHUA GAN, PU GAO, YASHU LI, RUIMIN LIU, NA
TANG, KAIQIN WANG, WEISHAN WEN, XINGQIN
WEN, DONG YAN, SIYUN YAN, XINLIN YANG,
JINCHUN LI, GUOYONG MA, AND LIJUAN YANG,

                    Plaintiffs,

      v.

GSUIG REAL ESTATE MEMBER LLC, WEBSTER
BANK, N.A. F/K/A STERLING NATIONAL BANK,
EMPIRE OUTLET MANAGEMENT, LLC, BFC
PARTNERS, LLC,

                    Defendants.
---------------------------------------------------------------X

**MEMORANDUM AND
ORDER**

24-CV-4234
(Reyes, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiffs[1] are 14 foreign investors who sought to immigrate to the United States through

the EB-5 visa program, a program administered by United States Immigration and Citizenship

Services ("USCIS") to reward foreign investors with permanent residency if they make certain

investments in a commercial enterprise in the United States and plan to create or preserve at least

10 permanent, full-time jobs for qualified U.S. workers.  *See* Dkt. No. 34 ¶¶ 1, 12.  Plaintiffs each

allegedly invested $500,000 (plus a $50,000 administrative fee) to participate in the EB-5 visa

program.  *See* Dkt. No. 34 ¶¶ 12, 17.  Plaintiffs made their investments in non-party New York

State Empire Outlet Fund I, LLC ("the EB-5 Lender") in connection with an Empire Outlets Mall

project ("the Project") located on Staten Island, New York.  *Id.*  The Project was developed by

Defendant BFC Partners, LLC ("BFC" or "Developer") and financed through a combination of

---

[1] Plaintiffs are Lihua Gan, Pu Gao, Yashu Li, Ruimin Liu, Na Tang, Kaiqin Wang, Weishan Wen, Xingqin
Wen, Dong Yan, Siyun Yan, XinlinYang, Jinchun Li, Guoyong Ma, and Lijuan Yang (collectively,
"Plaintiffs").

senior loans provided by Defendants GSUIG Real Estate Member LLC ("GSUIG") and Webster Bank, N.A. f/k/a Sterling National Bank ("Webster Bank"), as well as through an EB-5 loan provided by Plaintiffs and other foreign nationals. *Id.*

Plaintiffs bring this action against GSUIG, Webster Bank, and Empire Outlet Management, LLC ("EOM") ("the GSUIG Defendants"), as well as against BFC (collectively, with the GSUIG Defendants, "Defendants"), alleging claims of breach of fiduciary duty against EOM; aiding and abetting a breach of fiduciary duty against GSUIG, Webster Bank, and BFC; breach of contract against EOM; tortious interference with contract against GSUIG, Webster Bank, and BFC; unjust enrichment against EOM; civil conspiracy to breach a fiduciary duty against all Defendants; and civil conspiracy to breach a contract against all Defendants. *See* Dkt. No. 34. Plaintiffs argue that Defendants "knowingly and illegally colluded amongst themselves to ensure no recovery for Plaintiffs or other EB-5 investors[,]" and continued to transfer Plaintiffs' money into the Project after the Project was viable. *Id.* ¶ 2. Plaintiffs contend that GSUIG and Webster Bank further damaged Plaintiffs by "extinguish[ing] any hope of [Plaintiffs'] non-litigation recovery" when they purchased the Project assets, including the Empire Outlets mall property, "through a foreclosure sale in which they credit bid $10 million for [] assets which were appraised at $390 million by [the firm] Cushman and Wakefield during construction[.]" *Id.*

Plaintiffs allege that they are among more than 150 EB-5 investors who collectively poured more than $75 million into the Project, all of whom stand to recover nothing after the foreclosure sale of the Project assets. *Id.* ¶ 4. Plaintiffs further allege that each suffered "specific and easily quantifiable damages of at least $500,000 as a result of the full loss of each Plaintiff's $500,000 investment in the Project[.]" *Id.* In sum, Plaintiffs seek, *inter alia*, "economic damages in an amount to be determined at trial, which [] are believed to be in excess of $7,000,000.00," and

which figure they expect will increase upon addition of other EB-5 Project investor to this suit. *Id*.

Currently pending before this Court are Defendant BFC's January 15, 2025 motion to dismiss the Amended Complaint (Dkt. No. 41), as well as the GSUIG Defendants' January 15, 2025 motion to dismiss the Amended Complaint (Dkt. No. 42).

After carefully reviewing the record, and for the reasons set forth herein, the Court GRANTS Defendants' motions.[2]

## I.   Background

The following facts have been taken from the Amended Complaint and construed in the light most favorable to Plaintiff. *See TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 473 (2d Cir. 2011) (viewing facts in the light most favorable to the plaintiff); *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 253 (S.D.N.Y. Feb. 5, 2025) ("In assessing [the defendant's] motion to dismiss under Rule 12(b)(6), the Court is required to assume that all well-pleaded facts in the Complaint are true and view them in the light most favorable to [the plaintiff's] claims" (citing *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015))).

### A.   The EB-5 Investment and Failure Thereof

Plaintiffs, as noted above, are a group of 14 individuals who each invested $500,000 (plus a $50,000 administrative fee) in an EB-5 project located on Staten Island.  Dkt. No. 34 ¶ 1. Plaintiffs provided this capital pursuant to USCIS's EB-5 investment program, which "[p]ermits qualified foreign investors to obtain immigration visas and to apply for green cards if they invest in certain commercial enterprises that meet certain qualifications, including, but not limited to, the

---

[2] On August 21, 2024, the parties consented to the undersigned's adjudication of the pending dispositive motion.  *See* Dkt. No. 31; *see also* Text Order dated August 21, 2024.

creation or preservation of at least ten (10) jobs per investor." *Id.* ¶12 n. 3. Generally, once EB-5 investors invest the requisite capital, they file "a Form I-526 Immigration Petition for Entrepreneur ("I-526 Petition") with USCIS to show, based on a business plan and supporting documents submitted by the partnership, that the investment will satisfy EB-5 requirements." *Id.* ¶ 14 (citing 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6(a), (j)). "Upon approval of the I-526 Petition, USCIS will grant the investor conditional permanent residency, often known as a "conditional green card." *Id.* (citing 8 U.S.C. § 1186 b(a)(1)).[3]

As set forth in the Amended Complaint, within two years after receipt of the investor's conditional green card, the investor must file with USICS a Form I-829 Petition by Entrepreneur to Remove Conditions on Permanent Resident Status to permit USCIS to evaluate whether the investor has meet the requirements of the EB-5 program, including job creation and capital investment, whereupon the conditions on the investor's permanent residency are removed. Dkt. No. 34 ¶ 15 (citing 8 U.S.C. § 1186b(c); 8 C.F.R. § 216.6(a) and (c)).

Plaintiffs allege that, to solicit investors and raise capital under the EB-5 program, non-party EB-5 Lender, and other entities affiliated with BFC prepared and sent documents to Plaintiffs, including a Private Placement Memorandum, dated September 2, 2014 (as supplemented and amended, the "PPM"), and a Comprehensive EB-5 Business Plan, dated

---

[3] The United States Government allows certain foreign investors to engage in "new commercial enterprises," and subsequently be admitted to the United States as conditional permanent residents. *See* 8 U.S.C. §§ 1153(b)(5)(A), 1186b(a)(1). EB-5 immigration petitions are filed with the U.S. Department of Homeland Security and are subject to minimum monetary investment and job creation requirements. *See* 8 C.F.R. § 204.6.

December 17, 2012 (as supplemented and amended, the "Business Plan").[4]  Dkt. No. 34 ¶ 16.  The

PPM provided that

> [] the EB-5 Lender would offer 350 units at a subscription price of $500,000
> per unit for a total net proceeds to the EB-5 Lender entity of up to
> $175,000,000.00.  *See* PPM, at iii.  Consequently, with a $50,000.00
> administrative fee per Unit, the 350 units sold would raise $17,500,000.00
> in administrative fees.

*Id.* ¶ 17; Dkt. No. 43-2, Affidavit of John J. Kuster ("Kuster Aff."), Ex. B (PPM) at 10.  Further,

the PPM stated that

> [] EOM would be entitled to receive an "annual management fee equal to
> three percent (3%) of the outstanding principal amount of the Loan . . ." (the
> "Management Fee").   *See* PPM, at iii.   The PPM provided that the
> Management Fee would be paid quarterly in arrears "to the extent funds are
> available" and would be paid "only from available cash flow of the
> Company, and will not be paid out of the proceeds from the Subscription
> Price."  *Id.*  If the EB-5 Loan was outstanding in the full amount of
> $175,000,000.00 and funds were available, such management fee would
> total $5.25 million per year.

Dkt. Nos. 34 ¶ 18; 43-2, Kuster Aff., Ex. B (PPM) at 10.

Plaintiffs allege that, on May 1, 2014, they and a number of EB-5 investors, the EB-5

Lender, and EOM executed the Operating Agreement to form the non-party EB-5 Lender, New

York State Empire Outlet Fund I, LLC (the "Operating Agreement").  Dkt. Nos. 34 ¶ 19; 1-1.  The

Operating Agreement governed the rights, obligations and duties of EOM and the EB-5 Investors

regarding the Project.  *Id.*  Plaintiffs further allege that "[o]n September 2, 2014, the EB-5 Lender,

via the PPM, offered for subscription up to $175,000,000 of Limited Membership Units in the EB-

5 Lender for a purchase price of $500,000 per Unit."  *Id.* ¶ 20.  A loan was then made in accordance

with a building loan agreement (dated December 14, 2014 and as amended, the "EB-5 Building

---

[4] Plaintiffs have not filed the PPM, Business Plan, or certain other communications between Defendants
and the EB-5 Investors, as they were marked "confidential," however, Plaintiffs state that the same can be
filed under seal or in redacted form, if necessary.  Dkt. No. 34 ¶ 16 n.4.

Loan Agreement"), which was secured by, among other things, "a second priority mortgage on the fee interest in the Project property and all improvements thereon (the 'Collateral')." *Id*. ¶ 21.

GSUIG and Webster Bank are financial institutions that provide real estate loans. *Id*. ¶¶ 1, 6-7. GSUIG and Webster Bank financed the Project alongside the EB-5 Lender by issuing senior loans, which would take priority over the EB-5 Lender's junior loans. *Id*. ¶ 1.

On December 11, 2014, EOM agreed to subordinate the EB-5 Lender's loan to GSUIG's senior loan valued up to $100,000,000. *Id*. ¶ 22; Dkt. No. 43-1 at 5 & §§ 1(d), 1(f). In a separate agreement on the same day, the EB-5 Lender and GSUIG agreed to extend loans of up to $175,000,000 and $100,000,000 respectively to non-party St. George Outlet Development LLC ("EB-5 Borrower") to construct improvements on real property located on Staten Island, New York. Dkt. No. 34 ¶ 21; Dkt. No. 43-3 at 1, 3.

The EB-5 Lender, GSUIG, and the EB-5 Borrower entered into a contract on December 11, 2014, entitled the Subordination and Intercreditor Agreement (the "Original Subordination Agreement"), by which the EB-5 Loan was subordinated to the certain other Senior Loans,[5] "but only up to an amount equal to $185 million *less* the outstanding amount of the EB-5 Loan" and subject to certain exceptions. *Id*. ¶ 22; Dkt. No. 43-1 at 5 & §§ 1(d), 1(f).

After execution of the EB-5 Building Loan Agreement, GSUIG agreed to provide an initial loan of up to $135,000,000.00 to the EB-5 Borrower pursuant to a Building Loan Agreement and Project Loan Agreement, dated November 16, 2016 (the "GSUIG Building Loan Agreement"). *Id*. ¶ 23. Sterling Bank (as predecessor to Webster Bank, N.A.) agreed to loan the EB-5 Borrower an initial aggregate principal amount of up to $50,000,000.00 pursuant to a Building Loan

---

[5] The "Senior Loans" are comprised of loans extended to the EB-5 Borrower from Sterling Bank (as predecessor to Webster Bank, N.A.) of $50,000,000.00, pursuant to a Building Loan Agreement, originally signed April 14, 2017, and from GSUIG of $135,000,000.00, pursuant to a Building Loan Agreement and Project Loan Agreement, dated November 16, 2016. Dkt. No 34 ¶¶ 23-24.

Agreement, originally signed April 14, 2017 (the "Sterling Senior Loan Agreement," and, together with the GSUIG Building Loan Agreement, the "Senior Loans"). *Id.* ¶ 24.

Plaintiffs also allege that on December 11, 2014, at GSUIG's insistence, GSUIG, the EB-5 Lender and the EB-5 Borrower enter into a Subordinate Loan Servicing Agreement (the "Servicing Agreement"), later amended on October 23, 2017, establishing GSUIG as administrator and servicer of disbursements of the EB-5 Loan during the Project's construction. *Id.* ¶ 25.

On May 16, 2016, Plaintiffs allege that a revised Business Plan (the "2016 Business Plan") was sent to them and other EB-5 Investors, which stated:

> Initially, the Mall and Hotel were to be constructed simultaneously, captured in a 36 month timeframe. However, the Developer is now focused on construction of the Mall, with the Hotel construction to follow once the Mall is substantially complete in late 2017.

*Id.* ¶ 27.

Plaintiffs further allege that on November 15, 2016, an appraisal by the firm Cushman & Wakefield stated that, as of October 14, 2016 the Project's market value was "nominal," but would be valued at $345,000,000.00 by November 1, 2017, upon completion of construction and improvements, and was forecasted to be $390,000,000.00 by November 1, 2018, upon "stabilization." *Id*. ¶ 28.

Plaintiffs claim that on February 22, 2019, GSUIG, BFC and non-party JLL sought third-party bridge financing for the Project via a confidential offering memorandum, which led to GSUIG, Sterling National Bank, the EB-5 Lender and the EB-5 Borrower executing the Amended and Restated Subordination and Intercreditor Agreement (the "2019 Subordination Agreement") on March 4, 2019. *Id*. ¶¶ 29-30. Pursuant to this agreement, the EB-5 Lender further subordinated its interests to additional Senior Loans from GSUIG of up to $57 million, which Plaintiffs allege were extended to the EB-5 Borrower at a 20% APY interest rate. *Id*. ¶¶ 31-32; Dkt. No. 1-4 at 2.

Plaintiffs complain that they and the other EB-5 Investors were not informed of the 2019 Subordination Agreement prior to its execution, that the EB-5 Lender had no "contractual obligation" to further subordinate the EB-5 Loans to the Senior Loans, that the consideration provided to the EB-5 Lender in the 2019 Subordination Agreement was grossly inadequate, and that its $500,000 consent fee effectively amounted to a payoff by the Senior Lenders for "near certainty of no recovery on the outstanding EB-5 Loan amount." *Id*. ¶ 33-35.

Plaintiffs allege that the GSUIG Defendants knew that the 2019 Subordination Agreement's terms were highly unfavorable to the EB-5 Lender, and that the consideration and consent fee provided to the same were grossly inadequate in exchange for the full subordination of the EB-5 Loan. *Id*. ¶ 36. Plaintiffs further allege that they and the other EB-5 Investors did not consent to the 2019 Subordination Agreement, that the GSUIG Defendants knew of the lack of consent, and also knew that the 2019 Subordination Agreement directly benefitted GSUIG and Webster Bank at the cost of the EB-5 Lender. *Id*. ¶ 37-38.

According to Plaintiffs, EOM breached its common law and contractual fiduciary duty to Plaintiffs though the agreement to subordinate the EB-5 Loan, which directly caused Plaintiffs to lose the entirety of their investments. *Id*. ¶ 39. Specifically, Plaintiffs allege that EOM breached its duty to "perform its duties as a Manager in good faith and with that degree of care which an ordinary prudent person in like position would use under similar circumstances[,]" as set forth in the Operating Agreement. *Id*. (citing Operating Agreement §4.5). Had EOM not so breached its duties in subordinating the EB-5 Loan, along with other Defendants, other more beneficial outcomes were possible, including

> (i) a foreclosure sale to a third party buyer in 2019 or subsequent years resulting in a recovery on the EB-5 Loan, (ii) third party refinancing with less onerous interest rate terms or extended maturity dates resulting in stabilization of the project; or (iii) an in court or out-of-court restructuring

in which the EB-5 Loan received some recovery or equity position in the Project.

*Id.*

While the outlet mall portion of the Project opened to the public on May 16, 2019, the hotel portion of the Project, which Plaintiffs contend was integral to the undertaking, was never constructed. *See id.* ¶¶ 1 n.1, 40.

Plaintiffs allege that GSUIG sent a Notice of Default to the EB-5 Borrower on February 18, 2020. *Id.* ¶ 41. Plaintiffs claim that Sterling Bank, as predecessor-in-interest to Webster Bank, sent a Notice of Default to the EB-5 Borrower on April 17, 2020. *Id.* And Plaintiffs claim that the EB-5 Lender sent a Notice of Default to the EB-5 Borrower on April 21, 2020. *Id.* On May 4, 2020, the EB-5 Lender notified Plaintiffs and the other the EB-5 Investors of the serious financial issues faced by the Project, including of

> the total amount of EB-5 Loan funds loaned to the Project and certain "operational struggles" of the Project, including an "operating loss for 2020" and "a capital shortfall of approximately $25 million needed to fund current and future tenant improvements." [] The May 2020 Letter stated that the Developer had informed the EB-5 Lender that it "intends to ask all lenders to enter into a forbearance period on loan interest and to restructure the capital stack of the project." *Id.* The EB-5 Lender concluded that the "financial returns on the EB-5 Loan are likely materially in jeopardy and there is an increasing chance that the NCE [EB-5 Lender] may face a total loss on the EB-5 Loan." *Id.*

*Id.* ¶ 42.

On February 11, 2022, GSUIG filed suit in the Supreme Court of the State of New York, Richmond County, Index No. 150270/2022, seeking to foreclose on the security for the Senior Loans (and EB-5 Loans) for the Project (the "Foreclosure Action"). *Id.* ¶ 43. The EB-5 Lender filed its Answer, Counterclaim, and Cross Claim in the Foreclosure Action on April 27, 2022, but its Counterclaim and Cross Claim were subsequently dismissed after motion practice. *Id.* ¶ 44-45. Plaintiffs allege that the collateral securing the Senior Loans and EB-5 Loan was purchased by

Defendants GSUIG and Webster Bank at a foreclosure sale held on September 21, 2023 (the "Foreclosure Sale"), via a credit bid of the outstanding Senior Loans for $10,000,000. *Id*. ¶ 46. This transaction was approved by the Supreme Court of the State of New York, Richmond County, on March 19, 2024. *Id*. ¶ 47. Plaintiffs allege that the Foreclosure Sale eliminated the EB-5 Lender's lien on the collateral, thus, the "EB-5 Lender [would] therefore receive no recovery on the EB-5 Loan and, as a result, Plaintiffs and the other EB-5 Investors in the project [would] receive no recovery on their investments in the Project, absent this litigation." *Id*. ¶ 48.

In support of their breach of fiduciary duty claim against EOM, Plaintiffs allege that "EOM, as the Special Member under the Operating Agreement, owes fiduciary duties to the EB-5 Investors as Limited Members under the Operating Agreement." *Id*. ¶ 50. Plaintiffs allege that EOM's decision to enter into the Subordination Agreement "cannot be justified by any standard of care[,]" since doing so would blatantly be detrimental to the EB-5 Lender's position as a secured creditor. *Id*. ¶ 51. Plaintiffs state that EOM's wrongful conduct was "willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages." *Id*. ¶ 52.

In support of their aiding and abetting breach of fiduciary duty claim against GSUIG, Webster Bank, and BFC, Plaintiffs allege that BFC knew that EOM owed fiduciary duties to the EB-5 Investors because it "orchestrated the entire arrangement to obtain EB-5 financing for the development of the Project and was involved in the formation of the EB-5 Lender." *Id.* ¶ 57(a). Plaintiffs allege that GSUIG and Webster Bank had knowledge of EOM's duties because, during due diligence processes, each reviewed loan documents relating to the EB-5 Loan, "which set forth that EOM is the Special Member of the EB-5 Lender[,]" and that GSUIG and Webster Bank both executed the Subordination Agreement, "which would have required further diligence on the EB-5 Loan and the fiduciary duties owing to the EB-5 Lender by EOM." *Id*. ¶ 57(b).

Plaintiffs allege that GSUIG, Webster Bank, and BFC each provided substantial assistance to EOM by coordinating with EOM to execute the Subordination Agreement, and note that GSUIG's specifically enriched itself through the additional Senior Loans bearing an interest rate of 20% in the Subordination Agreement. *Id*. ¶ 58. Plaintiffs further allege that GSUIG, Webster Bank, and BFC's participation in EOM's breach of fiduciary duties was a "substantial factor" in occasioning the damages suffered by the EB-5 Lender and the EB-5 Investors, and that such conduct was "willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages. *Id*. ¶¶ 59-60.

In support of their breach of contract claim against EOM, Plaintiffs allege that the EOM violated Section 4.5 of the Operating Agreement, which, as noted *supra*, provides that EOM must perform its duties in good faith and with a "degree of care which an ordinary prudent person in like position would use under similar circumstances." *Id*. ¶ 62. Specifically, Plaintiffs allege that EOM, "as the Special Member & Manager of the EB-5 Lender[,]" did not act in good faith, and at a minimum, act[ed] with gross negligence or willful misconduct by failing to protect the interests of the EB-5 Lender as a secured creditor. *Id*. ¶¶ 63-64. Plaintiffs state that EOM also breached the implied duty of good faith and fair dealing regarding the Operating Agreement by entering into the 2019 Subordination Agreement on behalf of the EB-5 Lender because doing so "detrimentally harmed the EB-5 Lender in exchange for no valuable consideration to the EB-5 Lender." *Id*. ¶¶ 65-66. Plaintiffs also seek punitive damages on their breach of contract claim, alleging EOM's conduct was wrongful and "willful, wanton, malicious, oppressive, and outrageous." *Id*. ¶ 68.

In support of their tortious interference with contract claim against GSUIG, Webster Bank, and BFC, Plaintiffs allege that GSUIG, Webster Bank, and BFC were aware of the Operating Agreement between EOM and the EB-5 Investors, and intentionally and tortiously interfered with

the same.  *Id*. ¶¶ 71-72.  Plaintiffs allege that each of GSUIG, Webster Bank, and BFC intended to "disrupt the Operating Agreement in order to facilitate a self-dealing transaction by causing the EB-5 Lender to be subordinated for the purpose of permitting the EB-5 Borrower to obtain additional financing under the Senior Loans in order for the Project to generate short term returns for the Senior Lenders and eliminate any chance of recovery for the EB-5 Investors."  *Id*. ¶ 72(a).  Moreover, Plaintiffs allege that GSUIG and Webster Bank did so to "generate profits and fees under the Senior Loans and to further subordinate the EB-5 Loan to the Senior Loans."  *Id*. ¶ 72(b).  Plaintiffs state that GSUIG's, Webster Bank's, and BFC's respective conduct was "willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages."  *Id*. ¶ 74.

In support of their civil conspiracy to breach fiduciary duty claim against all Defendants, Plaintiffs allege that there was an agreement between the Defendants to "reckless[ly] waste [] more than $75 million in EB-5 Investors' money, including at least $7 million of Plaintiffs' monies[,]" and that overt acts in furtherance of this conspiracy of each Defendant consisted of negotiating and executing the 2019 Subordination Agreement.  *Id*. ¶¶ 77-78.  Plaintiffs add that Defendants had knowledge and awareness of their virtual elimination of the EB-5 Investors' right to recovery by subordinating the EB-5 Loan to the Senior Loans, while the Senior Lenders collected 20% interest on the loans and EOM collected a management fee.  *Id*. ¶ 79.  Plaintiffs allege that a meeting of the minds occurred regarding each Defendant, as evidenced by the negotiation of the 2019 Subordination Agreement without Plaintiffs' consent or knowledge.  *Id*. ¶ 80.

In support of their civil conspiracy to breach contract claim against all Defendants, Plaintiffs allege that Defendants each conspired with EOM to breach Operating Agreement section 4.5 (fiduciary duties) and "likely section 5.5 (Management Fee) insofar as EOM continued to

collect any Management Fees subsequent to entry into the 2019 Subordination Agreement[,]" including by negotiating the 2019 Subordination Agreement, and that doing so comprised overt acts. *Id*. ¶¶ 84-87.

In support of their unjust enrichment claim against EOM, Plaintiffs allege that EOM "charged the EB-5 Lender a 3% per annum Management Fee of the total outstanding amount owed under the EB-5 Loan[,]" which led to EOM's collection of millions of dollars, while Plaintiffs collected nothing. *Id*. ¶ 89-90. Plaintiffs do not dispute that EOM was "contractually entitled to the Management Fee"; instead, they assert that this entitlement did not survive EOM's alleged breach of the Operating Agreement by executing the 2019 Subordination Agreement. *Id*. ¶ 90. Thus, according to Plaintiffs, any Management Fee received by EOM after 2019 was retained by the same against equity and good conscience, and should have to be disgorged and paid to the EB-5 Investors. *Id*. ¶¶ 90-93.

### B.    Relevant Procedural History

On September 12, 2024, Plaintiffs filed an Amended Complaint. *See* Dkt. No. 34. Plaintiffs bring four claims against BFC: 1) aiding and abetting a breach of fiduciary duty (Count Two); 2) tortious interference with contract (Count Four); 3) civil conspiracy to breach a fiduciary duty (Count Five); and 4) civil conspiracy to breach a contract (Count Six). *See id*. Against EOM, Plaintiffs bring claims for breach of fiduciary duty (Count One), breach of contract *vis-à-vis* the Operating Agreement (Count Three), civil conspiracy to breach a fiduciary duty (Count Five), civil conspiracy to breach a contract (Count Six), and unjust enrichment (Count Seven). *See id*. Against GSUIG and Webster Bank, Plaintiffs bring claims of aiding and abetting a breach of fiduciary duty (Count Two), tortious interference with a contract (Count Four), civil conspiracy to breach a fiduciary duty (Count Five), and civil conspiracy to breach a contract (Count Six). *Id.*

On January 15, 2025, in accordance with the schedule established by the Court, BFC filed its fully-briefed motion to dismiss.  *See* Dkt. No. 41.   Also on January 15, 2025, the GSUIG Defendants filed their fully-briefed motion to dismiss.  *See* Dkt. Nos. 42-46.

On August 6, 2025 the Court directed the parties to file additional letter-briefing regarding whether Plaintiffs' claims were time-barred or subject to the doctrine of *res judicata*.  *See* August 5, 2025 Text Order.  Defendants filed their respective letters on August 8, 2025, *see* Dkt. Nos. 49-51, and Plaintiffs responded on August 12, 2025, *see* Dkt. No. 52.

## II.   <u>Legal Standard</u>

"To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).   This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Ashcroft*, 556 U.S. at 679.

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The Court must accept the well-pleaded factual allegations set forth in the

complaint as true and draw all reasonable inferences in favor of the plaintiff; however, the court need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). Speculative allegations must be dismissed. *See Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 186 (E.D.N.Y. 2022) ("Speculative, conclusory, or indefinite factual allegations are just as infirm as legal conclusions.").

"In deciding a motion to dismiss for failure to state a claim, the Court must consider only the allegations in the complaint, those documents attached to the complaint or incorporated by reference, and facts subject to judicial notice." *Bonner v. Town of Brookhaven*, No. 22-CV-4690 (GRB) (ARL), 2023 WL 6812276, at *2 (E.D.N.Y. Oct. 16, 2023) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). "The Court may take judicial notice of facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (citing Fed. R. Evid. 201(b)(2)). Ultimately, on a motion to dismiss, the inquiry is "whether the claimant is entitled to offer evidence to support the claims." *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (*per curiam*).

## III.    **Discussion**

As a preliminary matter, because a federal court exercising diversity jurisdiction applies the substantive state law of the state in which it sits, the Court applies New York law to the common law claims this case. *See McDuffie v. Wilner*, 415 F. Supp. 2d 412, 418 (S.D.N.Y. 2006); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994) (finding that in diversity cases, the federal courts are "bound to follow state law on any matter of substantive law") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

A.    **Defendants Did Not Plausibly Cause Plaintiffs' Injury**

To survive a motion to dismiss, Plaintiffs must adequately plead that the 2019 Subordination Agreement, and the actions of each Defendant, plausibly caused their damages. Causation is an essential element of each of Plaintiffs' claims in Counts One through Six. *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (quoting *United States Fire Ins. Co. v. Raia*, 94 A.D.3d 749, 751 (2d Dep't 2012)) (breach of fiduciary duty); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (aiding and abetting breach of fiduciary duty); *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (breach of contract); *Rich v. Fox News Network, LLC*, 939 F.3d 112, 127 (2d Cir. 2019) (citing *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006)) (tortious interference with a contract); *Biglio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (quoting *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (1st Dep't 2010)) (civil conspiracy). Because Plaintiffs seek damages, they must establish both factual causation (either but-for or substantial factor) and proximate causation for their claims for breach of fiduciary duty, breach of contract, tortious interference with a contract, and civil conspiracy to breach fiduciary duty or contract. *RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 208 (S.D.N.Y. 2009) (breach of fiduciary duty), *aff'd sub nom. RSL Commc'ns PLC, ex rel. Jervis v. Fisher*, 412 F. App'x 337 (2d Cir. 2011); *Fin. Freedom Senior Funding Corp. v. Bellettieri, Fonte & Laudonio, P.C.*, 852 F. Supp. 2d 430, 436 (S.D.N.Y. 2012) (quoting *LNC Inv., Inc. v. First Fid. Bank, N.A.*, 173 F.3d 454, 465–66 (2d Cir. 1999) (Sotomayor, J.)) (breach of contract); *Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am., Inc.*, 299 A.D.2d 204 (2002) (tortious interference with a contract); *see IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 383, 386 (S.D.N.Y. 2010) (noting that civil conspiracy is not an independent cause of action, and applying causation requirements for the underlying claim). For aiding and abetting breach of fiduciary duty,

16

a plaintiff must establish both that the underlying breach of fiduciary duty was the factual and proximate cause of plaintiff's damages, and also that the aider and abettor's substantial assistance in the breach itself proximately caused plaintiff's damages resulting from that breach, meaning that the injury must have been "a direct or reasonably foreseeable result" of the aider and abettor's conduct. *SPV Osus*, 882 F.3d at 345.

Under New York state law, but-for causation means the alleged breach is "a 'cause in fact' of the loss complained of by [a] plaintiff." *RSL Commc'ns*, 649 F. Supp. 2d at 208 (quoting *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 353 F. Supp. 2d 460, 484 (S.D.N.Y. 2005), *aff'd sub nom. In re Bankers Tr. Co.*, 450 F.3d 121 (2d Cir. 2006)). Where there are multiple defendants or multiple potential causes of a single harm, courts have employed "a test—dubbed, somewhat misleadingly, the 'substantial factor' test . . . . Nevertheless, each of the potential causes must be independently sufficient to have caused the plaintiff's injury." *See RSL Commc'ns*, 649 F. Supp. 2d at 209; *see also Point Prods. A.G. v. Sony Music Ent., Inc.*, 215 F. Supp. 2d 336, 342 (S.D.N.Y. 2002), *opinion amended on reconsideration*, No. 93-CV-4001 (NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) ("[A]pplying [the substantial factor] test requires that each individual action was sufficient standing alone to cause the same harm.").

Proximate cause represents the extent a defendant can be liable for negligent conduct when considering the facts from a policy perspective, including the foreseeability of loss. *See In re Perry H. Koplik & Sons, Inc.*, 476 B.R. 746, 802 (Bankr. S.D.N.Y. 2012), *adopted in part*, 499 B.R. 276 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 43 (2d Cir. 2014); *see also RSL Commc'ns*, 649 F. Supp. 2d at 209 (citing *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314 (1980)) (finding that proximate cause cannot be defined to cover every scenario). Pleading "a direct injury is a key element for establishing proximate causation, independent of and in addition to other

traditional elements of proximate cause." *See Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999), *as amended* (Aug. 18, 1999) (noting that there must be "some direct relation between the injury asserted and the injurious conduct alleged.") (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269 (1992)).  As noted above, a plaintiff must also sufficiently plead that its injury was "reasonably foreseeable[,]"—a concept distinct from direct injury (or remoteness).  *Id*.

Here, as discussed below, Plaintiffs have failed to establish either factual causation or proximate causation for Counts One through Six.

By way of background, Plaintiffs allege that EOM breached its fiduciary duty to Plaintiffs, Dkt. No. 34 ¶¶ 49-55, breached the Operating Agreement, *see id.* ¶¶ 61-68, and formed part of a civil conspiracy to breach its fiduciary duty, *id.* ¶¶ 75-81, and to breach the Operating Agreement, *id.* ¶¶ 82-87.  These claims all emanate from Plaintiffs' contention that, by entering into the 2019 Subordination Agreement and causing the EB-5 Lender's loans to be further subordinated to GSUIG's additional $57,000,000 Senior Loan, EOM caused Plaintiffs' loss by foreclosing any path to recovery of their investments.  *Id.* ¶¶ 54, 66, 67, 77, 78, 85, 86.

Plaintiffs also allege that GSUIG, Webster Bank, and BFC aided and abetted EOM's breach of fiduciary duty, *id.* ¶¶ 56-60, tortiously interfered with the Operating Agreement, *id.* ¶¶ 69-74, and formed part of a civil conspiracy for EOM to breach its fiduciary duty, *id.* ¶¶ 75-81, and to breach the Operating Agreement, *id.* ¶¶ 82-87.  As with EOM, Plaintiffs claim that, by entering into the 2019 Subordination Agreement and causing Plaintiffs' loans to be further subordinated to GSUIG's additional $57,000,000 Senior Loan, GSUIG and Webster Bank caused Plaintiffs' losses.  *Id.* ¶¶ 59, 72, 73, 77, 78, 85, 86.

In response, the GSUIG Defendants argue that the 2019 Subordination Agreement did not cause Plaintiffs' losses because GSUIG and Webster Bank's Senior Loans issued before 2019 already barred Plaintiffs from recovery.  *See* Dkt. No. 44 at 17–18.

### 1.    Cause-in-Fact

Under Plaintiffs' theories of liability for their breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, tortious interference with contract, and civil conspiracy claims, the GSUIG Defendants' entry into the 2019 Subordination Agreement is not a plausible cause-in-fact of Plaintiffs' damages.  Plaintiffs allege that subordination of the EB-5 Lender's debt to GSUIG's additional $57,000,000 Senior Loan in 2019 caused Plaintiffs' loss.  *See* Dkt. No. 34 ¶¶ 54, 66, 67, 77, 78, 85, 86.  Plaintiffs' own allegations, however, indicate that, even if the 2019 Subordination Agreement had not been signed, Plaintiffs would have remained subordinate to the first $110 million of the Senior Lenders' debt.  *See id*. ¶¶ 22, 78 (pursuant to a prior subordination agreement, Plaintiffs' debt was subordinate to an amount equal to $185 million less the EB-5 investors' collective $75 million contribution).

Under the 2014 Subordination Agreement, Plaintiffs could only recover once GSUIG and Webster Bank were repaid.  *See* Dkt. Nos. 44 at 17; 34 ¶ 22.  This outcome was not altered by execution of the 2019 Subordination Agreement, which further subordinated the EB-5 Lender's debt to that of the Senior Lenders by an additional $57,000,000.  Dkt. No. 34 ¶¶ 30–32.  Indeed, the EB-5 Investors' contributions fell far short of the required amount for recovery—even before the 2019 Subordination Agreement was signed.  *See* Dkt. No. 44 at 18.  Since Plaintiffs could not recover under the 2014 Subordination Agreement's terms, the GSUIG Defendants' entry into the 2019 Subordination Agreement did not factually cause their loss.

Alternatively, Plaintiffs argue that if the GSUIG Defendants had not entered into the 2019 Subordination Agreement, preferable alternatives would have been possible. *Id.* ¶ 39. Although GSUIG and Webster Bank could have pursued alternatives to the ultimate foreclosure sale, such as securing a third-party buyer, third-party refinancing, or restructuring, *id.*, the possibility that these alternatives would have occurred is entirely speculative. *See* Dkt. No. 44 at 19. The Senior Lenders could have pursued these alternatives regardless of an additional Senior Loan. Plaintiffs' assumption that the senior creditors would prioritize Plaintiffs' interests is conclusory. *See Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, No. 05-CV-6882 (GBD), 2009 WL 362118, at *6 (S.D.N.Y. Feb. 9, 2009) ("Plaintiff's speculative optimism, concerning what 'could have and would have' happened, cannot substitute for facts evincing direct causation and actual damages.").

Ultimately, GSUIG and Webster Bank's winning credit bid in the foreclosure action was for $10,000,000, *see* Dkt. No. 34 ¶ 46, and Plaintiffs did not mount an opposing bid or appeal the determinations of the Supreme Court of the State of New York, Richmond County. *See* Dkt. Nos. 44 at 16; 34 ¶ 47. GSUIG and Webster Bank would have still won the uncontested auction. Regardless of the execution of the 2019 Subordination Agreement, Plaintiffs would not have recovered. Accordingly, under either the but-for or substantial factor test, Plaintiffs failed to allege that the GSUIG Defendants factually caused their injury.

### 2. Proximate Causation

As noted above, the conduct of the GSUIG Defendants did not factually cause Plaintiffs' injury under either the but-for or substantial factor standard. *See RSL Commc'ns*, 649 F. Supp. 2d at 208 (describing factual causation as presenting a "threshold question" of whether the alleged breach occasioned plaintiff's injury) (quotation marks omitted).

20

But even assuming, *arguendo*, that Plaintiffs were able to establish factual causation, Plaintiffs cannot establish that the GSUIG Defendants' conduct was the proximate cause of Plaintiffs' injury. *See Packer v. Skid Roe, Inc.*, 938 F. Supp. 193, 196 (S.D.N.Y. 1996) (noting that "[i]ssues of proximate cause are normally questions of fact for the jury to decide, unless the court concludes that a reasonable jury could reach only one conclusion.").

No reasonable jury could find that the GSUIG Defendants' entry into the 2019 Subordination Agreement was the proximate cause of Plaintiffs' loss because, because, as elaborated upon above, there is no direct relation between it and the loss of Plaintiffs' investments. *See Laborers*, 191 F.3d at 235. At bottom, execution of the 2019 Subordination Agreement did not materially alter Plaintiffs' position as creditors *vis-à-vis* the EB-5 Lender, because, prior to its execution, the EB-5 Lender's loans were already substantially subordinate to the Senior Loans. *See* Dkt. Nos. 44 at 17; 34 ¶¶ 22, 30-32. Nor was Plaintiffs' injury the reasonably foreseeable result of the GSUIG Defendants' conduct. *See Laborers*, 191 F.3d at 235.

Moreover, the GSUIG Defendants' conduct is even less likely to have proximately caused Plaintiffs' injuries in light of the superseding cause of the COVID-19 pandemic. *See Sawyer v. Wight*, 196 F. Supp. 2d 220, 227 (E.D.N.Y. 2002) ("Super[s]eding events, as opposed to merely intervening ones, may break the causal chain and defeat proximate causation.") (citing *Mason v. U.E.S.S. Leasing Corp.*, 96 N.Y.2d 875, 877-78 (2001). "Super[s]eding events are 'extraordinary and unanticipated' occurrences that are unrelated to the breach that initially imperiled the plaintiff." *Id*. (citing *McKinnon v. Bell Sec.*, 268 A.D.2d 220, 221 (2d Dep't 2000)).

While the GSUIG Defendants understood the risks associated with entry the 2019 Subordination Agreement, *see* Dkt. No. 34 ¶ 35, the COVID-19 pandemic's impact on commercial

real estate was unforeseeable and completely divorced from such risk.[6]  Nor do Plaintiffs claim that EB-5 Borrower's default was foreseeable to the GSUIG Defendants.  *See id.* ¶ 41; Dkt. No. 44 at 15.  Plaintiffs do not allege facts that show how their particular loss was foreseeable, especially given the unprecedented and widespread impact of the pandemic.

Plaintiffs' causation defect also specifically extends to their claim that GSUIG and Webster Bank provided substantial assistance to EOM in its alleged breach of fiduciary duty.  *See* Dkt. No 34 ¶ 58.  To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must plead that the aider and abettor substantially assisted regarding the underlying breach, which entails a finding that the same "proximately caused the harm on which the primary liability is predicated." *SPV Osus*, 882 F.3d at 345.  "Substantial assistance exists where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing [to] act when required to do so enables the [alleged tort] to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Berman v. Morgan Keegan & Co.*, 455 Fed. App'x 92, 96 (2d Cir. 2012).  As established above, Plaintiffs have failed to establish that the GSUIG Defendants factually or proximately caused Plaintiffs' losses and did not otherwise "all but guarantee[] the total loss of Plaintiffs' capital" by entering into the 2019 Subordination Agreement.  Dkt. No. 34 ¶ 39.  Accordingly, Plaintiffs have not pleaded that GSUIG and Webster Bank proximately caused, and thus substantially assisted EOM's breach of fiduciary duty.

---

[6] The Court may take judicial notice of the COVID-19 pandemic and its effects of the commercial real estate market.  *See Hopkins Hawley LLC v. Cuomo*, No. 20-CV-10932 (PAC), 2021 WL 1894277, at *2 n.2 (S.D.N.Y. May 11, 2021) ("Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of facts that are 'generally known within the trial court's territorial jurisdiction.' General facts regarding the COVID pandemic indisputably fall within Rule 201's purview." (quoting Fed. R. Evid. 201)); *Fugelsang v. Dep't of Educ. of N.Y.C.*, No. 23-CV-8332 (LDH) (LKE), 2025 WL 974276, at *1 n.2 (E.D.N.Y. Mar. 31, 2025) (taking judicial notice of "facts regarding the spread and lethality of COVID-19 as reported by dependable public health authorities.").

In short, the GSUIG Defendants' entry into the 2019 Subordination Agreement was not a plausible proximate cause of Plaintiffs' loss. Accordingly, for the reasons stated above, because Plaintiffs have not adequately pleaded either factual or proximate causation, their breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, tortious interference with contract, civil conspiracy to breach a fiduciary duty, and civil conspiracy to breach a contract claims against the GSUIG Defendants must fail and are dismissed.

## B.    The Breach of Fiduciary Duty Claim as against EOM

As discussed above, because Plaintiffs have failed to plead that the GSUIG Defendants, including EOM, factually or proximately caused Plaintiffs' injury, their cause of action for breach of fiduciary duty must be dismissed. As detailed below, Plaintiffs' breach of fiduciary duty claim is subject to dismissal for other deficiencies as well.

In support of their breach of fiduciary duty claim against EOM, Plaintiffs allege that "EOM, as the Special Member under the Operating Agreement, owes fiduciary duties to the EB-5 Investors as Limited Members under the Operating Agreement." Dkt. No. 34. ¶ 50. Plaintiffs further allege that EOM's decision to enter into Subordination Agreement on behalf of the EB-5 Lender and thus on behalf of Plaintiffs "cannot be justified by any standard of care[,]" since doing so was blatantly detrimental to the EB-5 Lender's position as a secured creditor and resulted in no benefit to the EB-5 Lender. *Id*. ¶ 51.

Plaintiffs contend that EOM's conduct amounted to gross negligence, especially because EOM did not seek the consent of or inform Plaintiffs and the other EB-5 Investors before executing the 2019 Subordination Agreement. *Id*. ¶ 52-53. Further, Plaintiffs state that execution of the 2019 Subordination Agreement caused Plaintiffs' debt to become further subordinated to the Senior Loans by an additional $57 million, that the EB-5 Investors ultimately lost their entire

investments, and that EOM's conduct was wrongful, "willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages." *Id.* ¶¶ 54, 55.

In response, the GSUIG Defendants argue that Plaintiffs' fiduciary duty claim should be dismissed because Plaintiffs' injury was not caused by their conduct. *See* Dkt. No. 44 at 17-18. The GSUIG Defendants also argue that Plaintiffs fail to allege any conduct that would rise to the level of a breach of fiduciary duty, and that EOM was simply exercising its lawful authority as conferred by the Operating Agreement. *See id.* at 23. Moreover, the GSUIG Defendants argue that Plaintiffs' breach of fiduciary duty claim is barred by the business judgment rule, *see id.* at 24, and further, that it is duplicative of Plaintiffs' breach of contract claim, *see id.* at 26.

### 1.    Applicable Law

The elements of a breach of fiduciary duty claim are that (1) a fiduciary duty existed between plaintiff and defendant; (2) defendant breached that duty; and (3) plaintiff suffered damages as a result of the breach. *See Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009) (citing *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986)); *Yukos*, 977 F.3d at 241 ("To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'") (quoting *Raia*, 94, A.D.3d at 751).

A fiduciary relationship exists "'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 168 (1st Dep't 1987)). Under New York law, the managing member of an LLC owes fiduciary duties to the LLC and its fellow members. *McKinnon*, 187 A.D.3d at 733; *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 438 (S.D.N.Y. 2010). Generally,

members of an LLC may sue derivatively for mismanagement, but not individually. *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985); *see also Cortazar v. Tomasino*, 150 A.D.3d 668, 671 (2d Dep't 2017); *Jacobs v. Cartalemi*, 156 A.D.3d 605, 608 (2d Dep't 2017); *Wen v. New York City Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 544-45 (S.D.N.Y. 2023), *aff'd*, No. 23-7506, 2024 WL 4180521 (2d Cir. Sept. 13, 2024). LLC members, however, may sue individually if the court determines that the defendant violated "an independent duty to the [members]." *Wen*, 695 F. Supp. 3d at 544 (quoting *Excimer Assocs., Inc. v. LCA Vision, Inc.*, 292 F.3d 134, 140 (2d Cir. 2002)) (holding that, because manager's actions only harmed members indirectly by reducing value of their ownership stakes, and such damages arose from breach of duty owed directly to LLC, breach of fiduciary duty claims were derivative and could not be brought individually by investor plaintiffs).

A fiduciary duty consists of several obligations, including the duties of care, loyalty, and disclosure. *Rennaker Co. Consulting v. TLM Grp., LLC*, No. 16-CV-3787 (DAB), 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017); *see also* N.Y. Ltd. Liab. Co. Law § 409(a) ("A manager shall perform his or her duties as a manager . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.").

When under a duty of loyalty, a fiduciary must not engage in self-dealing, and must avoid situations where his or her "personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989). Pursuant to the duty of care, a fiduciary must perform his duties "in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." N.Y. Ltd. Liab. Co. Law § 409. The duty of disclosure requires a fiduciary to "make full disclosure of all material facts." *Salm v. Feldstein*, 799 N.Y.S.2d 104, 105 (2d Dep't 2005).

## 2. Application

Because Plaintiffs have not adequately pleaded facts sufficient to raise an inference that EOM committed any misconduct (never mind malice), the Court grants the GSUIG Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claim against EOM.

As a preliminary matter, the EB-5 Investors, including Plaintiffs, are owed fiduciary duties from EOM, by nature of their statuses as the EB-5 Lender's "Limited Members" and EOM's as "Special Member." *See DirecTV*, 691 F. Supp. 2d at 438 ("As the managing member of the company and as a comember with the plaintiff, the defendant owed the plaintiff a fiduciary duty to make full disclosure of all material facts.") (quoting *Salm*, 20 A.D.3d at 470). It is also pertinent that the Operating Agreement does not disclaim any fiduciary duties towards EB-5 Investors. *See* Dkt. No. 1-1 (Operating Agreement § 4.5) ("The Manager shall perform its duties as a Manager in good faith and with that degree of care which an ordinary prudent person in like position would use under similar circumstances."); *DirecTV*, 691 F. Supp. 2d at 438-39. Accordingly, EOM owed fiduciary duties of care, loyalty, and disclosure to Plaintiffs. *See Rennaker*, 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017).

### i. The Amended Complaint Fails to Plead Sufficient Facts against EOM

As noted above, Plaintiffs contend that EOM breached its fiduciary duties to Plaintiffs because EOM allegedly knew of the detrimental impact to Plaintiffs of executing the 2019 Subordination Agreement and further subordinating Plaintiffs' debt to that of the Senior Lenders. *See* Dkt. No. 34 ¶¶ 50-55. But, hindsight aside, the Amended Complaint does not plead facts that raise an inference that executing the 2019 Subordination Agreement, and doing so without Plaintiffs' consent, constituted wrongful action.

Plaintiffs contend that it was wrongful for EOM not to notify them and obtain their consent prior to executing the 2019 Subordination Agreement. *See* Dkt. No. 34 ¶ 53. But Plaintiffs fail to adequately allege that EOM acted wrongfully. As Defendants point out, the Operating Agreement granted wide latitude to EOM, as its Manager and Special Member, over the EB-5 Lender. *See* Dkt. No. 1-1 at 12-14 (Operating Agreement § 4.4 - General Authority and Powers of the Manager). Specifically, except where otherwise noted in the Operating Agreement, EOM was granted "the exclusive right and power to manage, operate and control the [EB-5 Lender] and to all things and make all decisions necessary or appropriate to cany on the business and affairs" of the same. *Id*. This power enabled EOM to:

- Encumber EB-5 Lender's assets as security for indebtedness owed to third parties, *id*. at 12 (Operating Agreement § 4.4(e));

- Bring, defend, or compromise any and all claims or liabilities in favor of or against EB-5 Lender, *id*. at 13 (Operating Agreement § 4.4(h));

- Enter into agreements whereby a commercial lender would "provide financial participation" with EB-5 Lender in its loans, *id.* (Operating Agreement § 4.4(l);

- Enter into agreements and contracts with any person, *id.* (Operating Agreement § 4.4(o));

- Maintain special power of attorney to "[e]xecute any and all documents necessary to enable [EOM] to carry out the powers of [EOM] set forth in this Agreement," *id.* at 29 (Operating Agreement § 10.3(f)); and

- Serve as the sole voting member of EB-5 Lender, and all questions before EOM as managing member of EB-5 Lender are to be decided by EOM and EOM only, *id.* at 38, 40 (Exhibit B to Operating Agreement, Art. I § 1, Art. II, § 2)

Accordingly, the execution of the 2019 Subordination Agreement did not require the knowledge or consent of the EB-5 Investors, including Plaintiffs, and EOM's failure to obtain it was not wrongful and does not form the basis of a claim of breach of EOM's fiduciary duties of care and disclosure.

Moreover, EOM did not violate its duty of loyalty because Plaintiffs have pleaded no facts indicating that EOM's interests conflicted with those of Plaintiffs in obtaining additional financing for the Project. While Plaintiffs claim, in conclusory fashion, that that the 2019 Subordination Agreement was a self-dealing transaction benefitting GSUIG, Webster Bank, and BFC, *see* Dkt. No. 34 ¶ 50, Plaintiffs do not credibly claim that it benefitted EOM. Thus, EOM did not violate its duty of loyalty to Plaintiffs through self-dealing or any conflict of interest.

### ii.      Plaintiffs Fail to Rebut the Business Judgment Rule

The GSUIG Defendants further contend that Plaintiffs' breach of fiduciary duty claim should be dismissed because EOM's decision to enter into the 2019 Subordination Agreement is insulated by the business judgment rule. *See* Dkt. No. 44 at 24-25. Plaintiffs contend that the business judgment is inapplicable because EOM did not act selflessly and in good faith, or possess disinterested independence when entering into the 2019 Subordination Agreement. *See* Dkt. No. 45 at 19-20. Specifically, Plaintiffs argue EOM was incentivized to keep receiving its 3% management fee and that the $500,000.00 consent fee the EB-5 Lender received in consideration for executing the 2019 Subordination Agreement was "grossly inadequate." *Id*. at 20.

"The business judgment rule 'bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.'" *Wen*, 695 F. Supp. 3d at 545 (citing *S.H. & Helen R. Scheuer Fam. Found., Inc., ex rel. Scheuer v. 61 Assocs.*, 582 N.Y.S.2d 662, 664 (1st Dep't 1992) *aff'd*, No. 23-7506,

2024 WL 4180521 (2d Cir. Sept. 13, 2024)). "[T]he business judgment rule . . . provides that, where corporate officers or directors exercise unbiased judgment in determining that certain actions will promote the corporation's interests, courts will defer to those determinations if they were made in good faith." *Id*. (quoting *In re Kenneth Cole Prods., Inc.*, 27 N.Y.3d 268, 274 (2016) (citation omitted)).

For the business judgment rule to apply, the manager must "possess a disinterested independence and [must] not stand in a dual relation which prevents an unprejudicial exercise of judgment." *Auerbach v. Bennett*, 47 N.Y.2d 619, 631 (1979); *see also In re Croton River Club, Inc.*, 52 F.3d 41, 44 (2d Cir. 1995) ("It is black-letter, settled law that when a director has an interest in a decision, the business judgment rule does not apply."). "Although the doctrine originated in suits against corporate directors, it also protects the managers of LLCs." *Wen*, 695 F. Supp. 3d at 546. The rule, however, does not bar recovery for "a decision that was the product of fraud, self-dealing or bad faith." *Patrick v. Allen*, 355 F. Supp. 2d 704, 710 (S.D.N.Y. 2005). "The test for self-interestedness is not whether a director or someone who controls him has engaged in or is liable for some sort of misconduct, but whether he will 'receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally.'" *Stein v. Immelt*, 472 F. App'x 64, 66 (2d Cir. 2012) (quoting *Marx v. Akers*, 88 N.Y.2d 189, 200–01 (1996)).

Here, Plaintiffs' allegations of bad faith, wrongful conduct, and lack of disinterestedness surrounding EOM's execution of the 2019 Subordination Agreement are conclusory and insufficient to rebut the business judgment rule. *See Isakov v. HASC Ctr., Inc.*, No. 17-CV-5775 (BMC), 2018 WL 1114714, at *3 (E.D.N.Y. Feb. 27, 2018) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions."). Plaintiffs have pleaded no facts indicating that the execution of the 2019

Subordination Agreement was anything other than a routine business transaction to obtain additional funding for the Project, to potentially keep it solvent and enable repayment of all loans, including that of the EB-5 Lender. *See* Dkt. No. 44 at 8-9. Nor do Plaintiffs allege that EOM (as distinguished from the EB-5 Lender) received a direct benefit from entering into the 2019 Subordination Agreement. *See Stein*, 472 F. App'x at 66; Dkt. No. 34 ¶ 35. Even assuming EOM's decision to enter into the 2019 Subordination Agreement was inadvisable, such a decision would be protected by the business judgment rule. *See F5 Cap. v. Pappas*, 856 F. 3d 61, 87-88 (2d Cir. 2017) (decisions to enter allegedly "flawed" contracts were protected by the business judgment rule absent adequate allegations of bad faith or the fiduciary's failure to consider sufficient information prior to the decisions).

Although Plaintiffs allege that EOM committed "willful, wanton, malicious, oppressive, and outrageous" conduct by entering into the 2019 Subordination Agreement, these conclusory allegations do not plausibly establish bad faith or self-dealing. Dkt. No. 34 ¶ 55. Without additional specific facts to prove that EOM entered into the agreement with malintent, Plaintiffs have failed to plausibly plead an exception to the business judgment rule. In the absence of an exception to the business judgment rule, the Court must presume that EOM acted in good faith and in the best interests of the EB-5 Lender, and Plaintiffs' breach of fiduciary duty claim must fail. *See Wen*, 695 F. Supp. 3d at 548 (concluding business judgment rule applied to bar breach of fiduciary duty claim against LLC manager despite the same's collection of EB-5 fund management fee); *Owen v. Hamilton*, 44 A.D.3d 452, 456 (1st Dep't 2007) (concluding receipt of a salary did not render a director interested in a challenged transaction); *In re LMI Legacy Holdings, Inc.*, 625 B.R. 268, 287–88 (D. Del. 2020) (applying New York law and dismissing a breach of fiduciary

duty claim against two directors who allegedly pursued a transaction to "maximiz[e] personal compensation, interests, and keep[] their management positions").

### iii.  Plaintiffs' Breach of Fiduciary Duty Claim is Duplicative of their Breach of Contract Claim

As recently pronounced by the New York Court of Appeals, courts in this Circuit, like the parties here, have "conflate[d] [the] 'economic loss' rule with the prohibition against duplicative contract and tort claims." *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 290 (2023). Indeed, the "'economic loss' rule . . . 'stands for the proposition that an end-purchaser of a product is limited to contract remedies and may not seek damages in tort for economic loss against a manufacturer,' and does not have application beyond the products liability context[.]" *Id.* (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 288 n.1 (2001)). Accordingly, this Court will analyze the parties' arguments in the context of whether Plaintiffs' breach of fiduciary duty claim is duplicative of their breach of contract claim.

A simple breach of contract does not give rise to a tort claim unless a legal duty independent of the contract has been violated. *See IKB*, 40 N.Y.3d at 290; *Clark-Fitzpatrick Inc. v. Long Is. R.R. Co.*, 70 N.Y. 2d 382, 389 (1987). If a plaintiff brings a breach of fiduciary duty claim alleging that "a legal duty independent of the contract itself has been violated," the breach of fiduciary duty claim is nonduplicative; however, "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *IKB*, 40 N.Y.3d at 290 (quoting *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711–713 (2018)). "In determining whether claims are duplicative, [courts] 'evaluate[] the nature of the injury, how the injury occurred and the harm it caused.'" *Id.* Since Plaintiffs' breach of fiduciary duty claim stems from the same set of facts as their breach of contract claim (to wit: that EOM breached the

Operating Agreement by entering into the 2019 Subordination Agreement), Dkt. No. 34 ¶¶ 50-51, Plaintiffs' breach of fiduciary duty claim must be dismissed as duplicative of it.

Additionally, EOM did not violate any duty independent of the contract.  Plaintiffs claim that EOM violated a duty to treat the EB-5 Investors with the "utmost candor, rectitude, care, loyalty, and good faith" by entering into the 2019 Subordination Agreement.  *Id.* ¶¶ 50-53.  The duty of care requires a fiduciary to execute its responsibilities "in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." *Rennaker*, 2017 WL 2240235, at *4 (quoting N.Y. Ltd. Liab. Co. Law § 409).  EOM's duty of care to the EB-5 Investors mirrors the duty of care enumerated in Section 4.5 of the Operating Agreement, Dkt. No. 34 ¶ 62, and so Plaintiffs' claim must fail for the same reasons.  EOM acted on its authority as manager of the EB-5 Lender to enter the 2019 Subordination Agreement.  Thus, EOM did not violate its duty of care, good faith, and rectitude to Plaintiffs.

EOM also did not violate its duty of loyalty to Plaintiffs.  A fiduciary cannot engage in "self-dealing, and he must avoid situations where his 'personal interest possibly conflicts with the interest of those owed a fiduciary duty.'"  *Rennaker*, 2017 WL 2240235, at *4 (quoting *Birnbaum*, 73 N.Y.2d at 466).  There is no indication that EOM's interests were in conflict with Plaintiffs' interest in obtaining additional financing for the Empire Outlets Project.

Further, EOM did not violate its duty of candor and disclosure to Plaintiffs.  "[T]he duty of disclosure requires a fiduciary to 'make full disclosure of all material facts.'"  *Id.* (quoting *Salm*, 799 N.Y.S.2d at 105); *see DirecTV*, 691 F. Supp. 2d at 439.  Although EOM did not inform the EB-5 Lenders of the 2019 Subordination Agreement or ask for their consent before signing it, *see* Dkt. No. 34 ¶ 53, EOM did not have an obligation to inform or ask for consent in its capacity as manager under the Operating Agreement.  Plaintiffs waived the duty of disclosure when they

entered into the Operating Agreement.  Dkt. No. 34 ¶ 19.  Thus, EOM did not violate its duty of candor and disclosure to Plaintiffs.

Because EOM did not violate any duty independent of the contract, Plaintiffs' breach of fiduciary duty claim, which stems from the same set of facts as their breach of contract claim, is duplicative of their breach of contract claim.

Accordingly, for the reasons stated above, Plaintiffs have failed to plead a valid cause of action for breach of fiduciary duty against EOM this claim must be dismissed on these grounds as well.

### iv.  Punitive Damages for Breach of a Fiduciary Duty Claim and other Tort Claims

As noted above, Plaintiffs seek punitive damages for their breach of a fiduciary duty claim against EOM.  *See* Dkt. No. 34 ¶ 55.  Plaintiffs also seek punitive damages for their other tort claims of aiding and abetting a breach of fiduciary duty, *id*. ¶ 60, and tortious interference with contract, *id* ¶ 74.

Under New York law, to obtain punitive damages in ordinary tort actions, a plaintiff must demonstrate that the defendant committed a tort under "circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton."  *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448–49 (E.D.N.Y. 2011) (quoting *Prozeralik v. Capital Cities Communications, Inc.*, 82 N.Y.2d 466, 479 (1993).  Moreover, the conduct in question must be "aimed at the public generally."  *Id*. (citing *Rocanova v. Equitable Life Assurance Soc. of U.S.,* 83 N.Y.2d 603, 613 (1994).  Plaintiffs have not adequately alleged facts indicating that any of the Defendants' conduct was tainted by a fraudulent or evil motive or aimed at the public.  Thus, an award of punitive damages is not appropriate for Plaintiffs' breach

33

of fiduciary duty claim or its other tort claims, including their aiding and abetting a breach of fiduciary duty and tortious interference with contract claims.

### C.     The Breach of Contract Claim as against EOM

Plaintiffs contend that EOM breached its obligations under the Operating Agreement by "fail[ing] to act in good faith when it, *inter alia*, failed to protect the interests of the EB-5 Lender as a secured creditor[,]" in violation of Section 4.5 thereof, in addition to breaching the implied covenant of good faith and fair dealing by entering into the 2019 Subordination Agreement. *See* Dkt. No. 34 ¶¶ 62-66. Moreover, Plaintiffs contend that EOM's conduct was "wanton, malicious, oppressive, and outrageous," such that punitive damages are warranted. *Id.* ¶ 68.

EOM moves to dismiss Plaintiffs' breach of contract claims on the basis that EOM's actions constituted valid exercises of its authority as expressly conferred under the Operating Agreement. *See* Dkt. No. 44 at 20-21. Specifically, EOM asserts that Plaintiffs have not adequately pleaded the requirement that EOM failed to perform the Operating Agreement, either by neglecting to "protect the interests of the EB-5 Lender as a secured creditor" or failing to "perform its duties as a Manager in good faith" by executing the 2019 Subordination Agreement. *Id.* at 21. EOM further contends that Plaintiffs are not entitled to punitive damages on their breach of contract claim. *Id.* at 21.

### 1.     Breach of Section 4.5 of the Operating Agreement

#### i.     Applicable Law

Under New York law, a plaintiff pleads a breach of contract claim if he shows "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "To plead these elements, 'a plaintiff must identify what provisions of the contract were

breached as a result of the acts at issue.'" *Piuggi v. Good for You Prods. LLC*, No. 23-CV-3665 (VM), 2024 WL 3274638, at *13 (S.D.N.Y. July 2, 2024) (citing *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011)).

## ii.   Application

Here, Plaintiffs have failed to adequately plead that EOM breached Section 4.5 of the Operating Agreement because they have not shown that EOM failed to perform or caused damages to Plaintiffs.

Section 4.5 of the Operating Agreement states that EOM shall "perform its duties as a Manager in good faith and with that degree of care which an ordinary prudent person in like position would use under similar circumstances[.]" Dkt. No. 34 ¶ 62 (citing Operating Agreement, § 4.5). But as discussed above in the context of Plaintiffs' claim against EOM for breach of fiduciary duty, Plaintiffs have failed to plead facts indicating EOM's conduct was wrongful. *See Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 215-16 (E.D.N.Y. 2016).

EOM cites *Manchester Equip. Co. v. Panasonic Indus. Co.* for the proposition that a party cannot be held liable for breach of contract for conduct expressly permitted by the agreement. *See* 141 A.D.2d 616, 617 (2d Dep't 1988). *See* Dkt. No. 44 at 22. Plaintiffs, alternatively, contend that reliance on *Manchester* is improper, and that Defendants cannot use it to state that "an LLC manager can never breach an Operating Agreement if the agreement authorizes the LLC manager to enter into contracts." Dkt. No. 45 at 17.

Although *Manchester* is not binding, the Court agrees with Defendants. In that case, the court held that the "causes of action alleged in the complaint, sounding in breach of contract and fraud, were completely undermined and rendered legally insufficient by the very terms of the

contract[,]" which expressly permitted the defendant to engage in the activity plaintiff complained of. *Manchester*, 141 A.D.2d at 617 ("[T]he claim that [defendant] breached the contract by selling directly to [plaintiff's] established customers was indisputably contradicted by the language of the contract and, thus, failed to state a viable cause of action."). Here, EOM's conduct, including the negotiation and execution of the 2019 Subordination Agreement, was similarly authorized by the Operating Agreement. *See* Dkt. No. 1-1 at 12-13. Indeed, the Operating Agreement conferred wide latitude upon EOM, including to encumber the EB-5 Lender's assets, bring, defend, or settle suits or claims on behalf of the EB-5 Lender, contract with other parties, including commercial lenders, to participate with the EB-5 Lender in its loans, enter agreements or contracts with anyone, maintain power of attorney to execute documents on behalf of the EB-5 Lender, serve as the sole voting member of the EB-5 Lender, and retain sole decision-making authority over it. *Id.* at 12-13, 39, 40. Plaintiffs' conclusory assertions that EOM failed to protect their investment is insufficient to raise an inference that EOM breached any component of the Operating Agreement.

Moreover, as further discussed above, Plaintiffs have failed to plead facts indicating that EOM caused their injury. *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 446 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 531 (2d Cir. 2019) ("Where a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order.") (quoting *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 234 A.D.2d 187, 190 (1st Dep't 1996)); *Boccardi Cap. Sys., Inc.*, 2009 WL 362118, at *6. Accordingly, Plaintiffs' claim that EOM breached the Operating Agreement fails for that reason as well.

## 2.     Breach of the Implied Covenant of Good Faith and Fair Dealing

New York's implied covenant for fair dealing and good faith bars a contractual party from "do[ing] anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 652 (E.D.N.Y. 2012) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006)). "It is axiomatic that implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Keystone Food Holdings Ltd. v. Tyson Foods, Inc.*, 492 F. Supp. 3d 134, 153 (S.D.N.Y. 2020) (quoting *ARI and Co. v. Regent Intern. Corp*., 273 F. Supp. 2d 518, 521 (S.D.N.Y. 2003)). "The covenant's purpose is to further an agreement by protecting a promise against breach of the reasonable expectations and inferences derived from the agreement." *Id*. (citing *ARI and Co.*, 273 F. Supp. 2d at 522) (quotation marks omitted).

But "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). "[W]hen a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant must be dismissed as duplicative of the breach of contract claim." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (citing *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (1st Dep't 2010)); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011) (dismissing claim for breach of the implied covenant of good faith and fair dealing that stemmed from the same facts as the one for breach of contract redundant and subject to dismissal); *Ellington*, 837 F. Supp. 2d at 205 ("[A]s a general rule, the cause of action alleging breach of the implied covenant is duplicative of a cause of action alleging breach of

contract.").  A plaintiff cannot pursue both claims of breach of an express contract and a breach of

an implied covenant based on the same facts unless "there is a dispute over the meaning of the

contract's express terms."  *Spinelli v. National Football League*, 903 F.3d 185, 206 (2d Cir. 2018).

Here, Plaintiffs' allegations that EOM breached the implied covenant of good faith and fair

dealing are substantially similar to their allegations that EOM breached the Operating Agreement.

*Compare* Dkt. No. 34 ¶ 63 ("EOM, as the Special Member & Manager of the EB-5 Lender,

[breached Section 4.5 of the Operating Agreement by] *inter alia*, fail[ing] to protect the interests

of the EB-5 Lender as a secured creditor."), *with id.* ¶ 66 ("EOM breached this implied covenant

of good faith and fair dealing by entering into, on behalf of the EB-5 Lender, the 2019

Subordination Agreement.").  In sum and substance, Plaintiffs complain that EOM breached the

implied covenant of good faith and fair dealing by entering into the 2019 Subordination

Agreement.  *See id.*  The claims' similarity is further evidenced by the fact that both claims are

subsumed into Count Three of Plaintiffs' Amended Complaint for breach of contract and are not

separately enumerated.  *See* Dkt. No. 34 ¶¶ 61-68.

Accordingly, Plaintiffs' claim that EOM breached Operating Agreement and the implied

covenant of good faith and fair dealing must be dismissed.

### 3.    Punitive Damages for Breach of Contract

As noted above, Plaintiffs contend they are entitled to punitive damages on their breach of

contract claim.  *See id*. ¶ 68.  Plaintiffs' contention, however, that they are entitled to punitive

damages for their breach of contract claim against EOM is misplaced.  *See Cummings v. Premier

Rehab Keller, P.L.L.C.*, 596 U.S. 212, 223-24 (2022) (citing Restatement (Second) of Contracts §

355 and noting that, generally, punitive damages are unavailable for claims of breach of contract).

Nothing here indicates that EOM's conduct was aimed at the public or otherwise puts this case

within the relatively narrow band of those for which punitive damages are appropriate. *See TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 95 (2d Cir. 2005) (noting punitive damages for breach of contract are reserved for cases of "a gross and wanton fraud upon the public") (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 406 (1961)); *Int'l Christian Broad., Inc. v. Koper*, 928 F. Supp. 2d 559, 562 (E.D.N.Y. 2013) ("A narrow exception to the rule barring punitive damages in a breach of contract action applies where egregious, independently tortious conduct is alleged and, in addition, public rights are implicated."). Thus, Plaintiffs are not entitled to punitive damages in connection with their breach of contract claim.

### D.    The Aiding and Abetting Breach of a Fiduciary Duty Claims as against GSUIG, Webster Bank, and BFC

In support of their claim that the GSUIG, Webster Bank, and BFC aided and abetted EOM's breach of fiduciary duty, Plaintiffs allege that "[e]ach of GSUIG, Webster[,] and BFC knew that EOM owed fiduciary duties of care and loyalty to the EB-5 Investors." Dkt. No. 43 ¶ 57. Specifically, Plaintiffs claim that "BFC knew because it orchestrated the entire arrangement to obtain EB-5 financing for the development of the Project and was involved in the formation of the EB-5 Lender." *Id.* ¶ 57(a). Moreover, Plaintiffs allege "GSUIG & Webster knew [of EOM's fiduciary duties] because they each reviewed the loan documents relating to the EB-5 Loan, which sets forth that EOM is the Special Member of the EB-5 Lender[,]" and that GSUIG and Webster Bank further knew through the due diligence they allegedly conducted as parties to the 2019 Subordination Agreement. *Id.* ¶ 57(b). Plaintiffs also allege that GSUIG, Webster Bank and BFC each substantially assisted EOM's breach by coordinating with EOM to execute the 2019 Subordination Agreement, particularly GSUIG, which allegedly "enrich[ed] itself to the detriment of the EB-5 Investors through the additional Senior Loans bearing a 20% interest rate." *Id.* ¶ 58.

Plaintiffs argue that GSUIG, Webster Bank, and BFC's participation in EOM's breach, and their enrichment therefrom, was a "substantial factor in causing harm to the EB-5 Lender and the EB-5 Investors." *Id.* ¶ 59. Plaintiffs further state that GSUIG, Webster Bank, and BFC's conduct was wrongful, "willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages." *Id.* ¶ 60.

In support of their motion to dismiss, GSUIG and Webster Bank argue that Plaintiffs have failed to plead that there was an underlying breach of fiduciary duty, without which there cannot be derivative liability of aiding and abetting a breach of fiduciary duty. *See* Dkt. No. 44 at 27. GSUIG and Webster Bank further argue that, even assuming existence of a breach, Plaintiffs have failed to adequately plead that GSUIG and Webster Bank knowingly induced or participated in any breach. *Id.*

BFC moves to dismiss Plaintiffs' claim for aiding and abetting a breach of fiduciary duty on the bases that Plaintiffs failed plead that BFC had actual knowledge EOM's fiduciary duties to Plaintiffs *vis-à-vis* the Operating Agreement, or any breach thereof; that BFC provided substantial assistance to EOM in any alleged breach; and that BFC proximately caused injury to Plaintiffs resulting from the breach. *See* Dkt. No. 41-1 at 9-11.

### 1.   Applicable Law

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003)). Regarding the element of knowing inducement or participation in the breach, "'[a]lthough a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be

an allegation that such defendant had actual knowledge of the breach of duty.'" *Id.* (quoting *Kaufman*, 307 A.D.2d at 125). Moreover, "[a] person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Id.* (quoting *Kaufman*, 307 A.D.2d at 126). "Substantial assistance exists where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing [to] act when required to do so enables the [alleged tort] to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Berman*, 455 Fed. App'x at 96 (quoting *UniCredito Italiano SpA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 502 (S.D.N.Y.2003)).

## 2. Application

Here, Plaintiffs' claim for aiding and abetting breach of fiduciary duty must fail as against the GSUIG Defendants because, as explained above, Plaintiffs have not adequately pleaded an underlying claim of breach of fiduciary duty against EOM. *See Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 286 (E.D.N.Y. 2010) (dismissing aiding and abetting breach of fiduciary duty and conversion because the underlying torts were dismissed); *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011) (dismissing claim for aiding and abetting breach of fiduciary duty where the plaintiff could not make out an underlying breach of a fiduciary duty); *OFSI Fund II, LLC v. Canadian Bank of Com.,* 82 A.D.3d 537, 540 (1st Dep't 2011) ("As there is no breach of fiduciary claim, there can be no claim for aiding and abetting breach of fiduciary duty.").

Additionally, even if Plaintiffs had adequately pleaded an underlying breach of fiduciary duty claim, they have failed to adequately allege that GSUIG, Webster Bank, or BFC had actual knowledge of such a breach. *See Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 286 (E.D.N.Y. 2010); *In re Agape Litig.*, 773 F. Supp. 2d 298, 367 (E.D.N.Y. 2011) (claims for aiding

and abetting a breach of fiduciary duty and conversion each require allegations of actual knowledge of the principal's breach); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006) (collecting cases); *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009).

Plaintiffs' conclusory allegations that GSUIG and Webster Bank knew of EOM's fiduciary breach from reviewing documents showing EOM's duties as Special Member of the EB-5 Lender, and through alleged due diligence regarding the 2019 Subordination Agreement, are insufficient to establish actual knowledge of a breach of fiduciary duty. *See Krys v. Pigott*, 749 F. 3d 117, 130 (2d Cir. 2014) ("[T]hese allegations that appellees knew of and agreed to participate in . . . [the] breach of fiduciary duty are conclusory because the Amended Complaint lacks any allegation that appellees had actual knowledge of certain key facts . . . that could give rise to a reasonable inference of such knowledge and agreement."). The same can be said about Plaintiffs' assertion that BFC knew of EOM's breach because of its involvement in coordinating EB-5 financing for the Project and participation in the formation of the EB-5 Lender. Dkt. No. 34 ¶ 57(a). If anything, these allegations might permit an inference of constructive knowledge, which is nevertheless insufficient. *Krys*, 749 F.3d at 127 ("However, under New York law, a complaint adequately alleges the knowledge element of an aiding and abetting claim when it pleads 'not . . . constructive knowledge, but actual knowledge of the fraud as discerned from the surrounding circumstances.'") (quoting *Oster v. Kirschner*, 77 A.D.3d 51, 56 (1st Dep't 2010)).

The notion that GSUIG and Webster Bank knew of the patently unfair terms of the 2019 Subordination Agreement is also insufficient, and a subjective characterization of a transaction that, while ultimately was unsuccessful in sustaining the Project, provided a $57 million injection of capital without the EB-5 Lender or Plaintiffs having to contribute additional funds. *See In re*

*Old CarCo LLC*, 435 B.R. 169, 186-87 (Bankr. S.D.N.Y. 2010) (claim premised on inadequacy of consideration dismissed where court considered "the significant value received . . . pursuant to the overall transaction").

Moreover, Plaintiffs have not adequately pleaded facts raising an inference that GSUIG, Webster Bank, or BFC substantially assisted any alleged breach of fiduciary duty by OEM or proximately caused injury to Plaintiffs. *See Berman*, 455 Fed. App'x at 96. Allegations that any coordination of GSUIG, Webster Bank, or BFC regarding with EOM to execute the 2019 Subordination Agreement amounts to substantial assistance are insufficient to raise an inference that doing so "affirmatively assist[ed], help[ed] conceal, or by virtue of failing [to] act when required to do so enable[d] the [alleged tort] to proceed[.]" *Id*. Nor can GSUIG's alleged receipt of 20% interest on the additional Senior Loans.

Accordingly, because Plaintiffs have failed to adequately plead a cause of action for aiding and abetting a breach of fiduciary duty against GSUIG, Webster Bank, and BFC, this claim must be dismissed.

### E.   The Tortious Interference with a Contract Claim against GSUIG, Webster Bank, and BFC

In support of their claim that GSUIG, Webster Bank, and BFC tortiously interfered with the Operating Agreement, Plaintiffs allege that they each were aware of the Operating Agreement, and intended to disrupt the same to "facilitate a self-dealing transaction by causing the EB-5 Lender to be subordinated for the purpose of permitting the EB-5 Borrower to obtain additional financing under the Senior Loans in order for the Project to generate short term returns for the Senior Lenders and eliminate any chance of recovery for the EB-5 Investors." Dkt. No. 34 ¶¶ 71-72(a). Plaintiffs further state that "GSUIG and Webster intended to or designed to disrupt the Operating Agreement in order to generate profits and fees under the Senior Loans and to further

subordinate the EB-5 Loan to the Senior Loans[,]" and that as a result, Plaintiffs and the EB-5 Investors lost the full value of their investments. *Id.* ¶¶ 72(b)-73. Plaintiffs also seek punitive damages for this claim. *Id.* ¶ 74.

GSUIG and Webster Bank argue that they cannot be held liable for tortious interference with a contract because Plaintiffs have failed to allege that EOM breached the Operating Agreement, or that GSUIG and Webster Bank had actual knowledge of the Operating Agreement, intentionally procured EOM's alleged breach, or used "wrongful means" to do so. *See* Dkt. No. 44 at 32.

BFC moves to dismiss Plaintiffs' claim for tortious interference with a contract on the bases that Plaintiffs have failed to set forth well-pleaded facts indicating that BFC had actual knowledge the Operating Agreement, or any specific provision that was allegedly breached by EOM; that BFC intentionally interfered with the Operating Agreement; that BFC proximately caused the purported breach of contract; or that BFC utilized "wrongful means" to induce EOM to breach the Operating Agreement. Dkt. No. 41-1 at 12-16.

### 1. Applicable Law

A claim for tortious interference with a contract requires "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom." *Rich*, 939 F.3d at 126-27 (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)); *Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 54 (2d Cir. 2019). "[A] plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Rich*, 939 F.3d at 127 (quoting *Burrowes*, 808 N.Y.S.2d at 53).

"While a defendant need not be aware of the details of a contract, it must have 'actual knowledge' of the contract's existence, and conclusory allegations that a defendant knew or should have known of a contract are insufficient to plead a tortious interference with contract claim." *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 201 (E.D.N.Y. 2024) (citing *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724 (SIL), 2020 WL 10508196, at *14 (E.D.N.Y. June 28, 2020)). Moreover, the third element requires a defendant to "specifically intend[] to interfere with the relevant contract." *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-CV-7529 (RJS), 2016 WL 5414979, at *5 (S.D.N.Y. Mar. 18, 2016) (Sullivan, J.). Indeed, "[a]lthough the defendant need not have acted out of malice, 'the interference must be intentional and an interference that is merely an intrusion that is negligent or incident to some other lawful purpose is not enough.'" *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 212 (W.D.N.Y. 2021) (quoting *N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, No. 12-CV-3584 (JCF), 2013 WL 1500333, at *4 (S.D.N.Y. Apr. 12, 2013)). Accordingly, to meet this element, "[a] plaintiff must allege facts showing that the defendant's objective was to procure such a breach." *Id.* (quotations and citations omitted); *United Coal Co., LLC v. Xcoal Energy & Res.*, No. 23-CV-5709 (ER), 2024 WL 4533349, at *7 (S.D.N.Y. Oct. 21, 2024) (same).

### 2.    Application

Plaintiffs' claim for tortious interference with a contract against GSUIG, Webster Bank, and BFC must fail because Plaintiffs have failed to adequately allege any underlying breach of the Operating Agreement. *See* Section III.C.1; *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 468 (S.D.N.Y. 1996) ("In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party.") (internal quotation marks and citations omitted).

Plaintiffs' claim for tortious interference with the Operating Agreement also fails as against BFC because Plaintiffs failed to plead that BFC had actual knowledge of the Operating Agreement. *See TileBar*, 723 F. Supp. 3d at 201-02; *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008) ("With regard to the second element, the plaintiff must 'provide specific allegations' of the defendant's knowledge and cannot survive a motion to dismiss by making merely a "conclusory assertion" of knowledge.") (citing *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001)).  Any assertion that BFC knew of any alleged breach of the Operating Agreement by EOM because of BFC's having "orchestrated the entire arrangement to obtain EB-5 financing for the development of the Project and involve[ment] in the formation of the EB-5 Lender[,]" *see id.* ¶ 57(a), is insufficient to substantiate BFC's actual knowledge.  At best, these allegations may raise an inference of constructive knowledge but fall short of the actual knowledge required to sustain a cause of action for tortious interference with a contract.  *See TileBar*, 723 F. Supp. 3d at 202 ("[C]ourts have reiterated that it is not enough to allege that a defendant had constructive knowledge of or should have known about a contract.").

Conversely, this Court holds that Plaintiffs have adequately pleaded GSUIG's and Webster Bank's actual knowledge of the Operating Agreement.  Plaintiffs, GSUIG, and Webster Bank agree that the Senior Lenders likely conducted due diligence related to transactions with the EB-5 Lender.  *See* Dkt. Nos. 34 ¶ 57; 45 at 23; 46 at 13.  Specifically, Plaintiffs allege that GSUIG and Webster Bank "reviewed the loan documents relating to the EB-5 Loan" and were required to conduct due diligence regarding the same.  *See* Dkt. No. 34 ¶ 57.  Plaintiffs also allege that GSUIG served for years as administrator and servicer of disbursements of the EB-5 Loan during the construction of Empire Outlets project.  *See id.* ¶ 25.  In light of the allegations of due diligence

and GSUIG's longstanding role in administering the EB-5 Loan, Plaintiffs have plausibly alleged GSUIG's and Webster Bank's actual knowledge of the Operating Agreement.

But even assuming GSUIG's, Webster Bank's, and BFC's actual knowledge of the Operating Agreement, and an underlying contractual breach by EOM, because Plaintiffs have not alleged that GSUIG, Webster Bank, or BFC had the specific intention of procuring such a breach, their tortious interference with a contract claim must fail. *See TileBar*, 723 F. Supp. 3d at 203; *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20-CV-3773 (LGS), 2021 WL 2037552, at *7 (S.D.N.Y. May 21, 2021) (rejecting allegation that third-party defendants "intentionally and without justification orchestrated the scheme" to have defendants breach contract as "conclusory and not entitled to be assumed true") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Instead of alleging the intentional procurement of EOM's alleged breach of the Operating Agreement, as required, Plaintiffs allege that GSUIG and Webster Bank intended to "caus[e] the EB-5 Lender to be subordinated for the purpose of permitting the EB-5 Borrower to obtain additional financing under the Senior Loans[,]" and "generate profits and fees under the Senior Loans[.]" Dkt. No. 34 ¶¶ 72(a)-(b). This allegation is insufficient; accordingly, Plaintiffs' tortious interference with a contract claim is subject to dismissal on this basis as well.

i.     **Economic Interest Defense**

While it is true that "[u]nder New York law, actions taken to protect an economic interest[] are justified and cannot give rise to a tortious interference with a contract claim," *see N. Shipping Funds I, L.L.C.*, 2013 WL 1500333, at *5-6, "[s]everal courts in the Second Circuit have refused to apply the economic interest defense at the pleading stage to dismiss complaints for tortious interference with contract, [because] the facts of the pleadings were not sufficiently developed to show entitlement to the defense[,]" *See Hildene Capital Mgmt., LLC v. Friedman, Billings,*

*Ramsey Grp., Inc.*, 11-CV-5832 (AJN), 2012 WL 3542196, at *9 (S.D.N.Y. Aug. 15, 2012). This Court agrees, and declines at this time to invoke the economic interest defense as another grounds for dismissal of Plaintiffs' tortious interference with a contract claim. *See Hildene*, 2012 WL 3542196, at * 9. That said, Plaintiffs' tortious interference with a contract claim also fails for the independent reason that Plaintiffs have not pleaded that GSUIG, Webster Bank, or BFC had the objective to procure a breach of the Operating Agreement. *See Prospect Funding Holdings, LLC. v. Vinson*, 256 F. Supp. 3d 318, 327-28 (S.D.N.Y. 2017) ("[A] plaintiff must allege facts showing that 'the defendant's *objective* was to procure such a breach.'") (citation omitted).

Moreover, and as discussed above, Plaintiffs' failure to sufficiently allege that GSUIG, Webster Bank, or BFC proximately caused EOM's alleged breach of the Operating Agreement is also grounds for dismissal of their tortious interference with a contract claim. *See TileBar*, 723 F. Supp. 3d at 203 ("Lastly, plaintiff has not alleged—through factual or even conclusory pleading— that the Confidentiality Agreement would not have been breached 'but for' [defendant's] conduct.") (citing *TrueSource, LLC v. Niemeyer*, No. 19-CV-4121 (GRB) (RER), 2021 WL 9507721, at *5 (E.D.N.Y. Jan. 21, 2021)).

### ii. Wrongful Means

Plaintiffs contend that "wrongful means" of inducing an alleged breach need not be alleged to state a cause of action for tortious interference with a contract. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980) ("'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract[.]"). Plaintiffs correctly state the law in this regard. *See Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) ("The wrongful means

requirement makes alleging and proving a tortious interference claim with business relations "more demanding" than proving a tortious interference with contract claim.") (citing *Guard–Life Corp.*, 50 N.Y.2d at 191); *N. Shipping Funds I, L.L.C.*, 2013 WL 1500333, at *4 ("Where, as here, 'a plaintiff alleges interference with a valid, enforceable contract . . . there is legal authority establishing that it is not necessary to allege that the interference was malicious or done through wrongful means' but rather needs only to allege that the interference was 'done without justification.'") (citing *Medtech Products Inc.*, 596 F. Supp. 2d at 797-98)).  While Plaintiffs correctly note that alleging wrongful means is not required to state a claim for tortious interference with a contract, this does not salvage their claim.  Indeed, Plaintiffs' claim for tortious interference with a contract fails for the reasons stated above, including for, *inter alia*, failure to allege an underlying breach of the Operating Agreement, failure to allege BFC's actual knowledge of the Operating Agreement or any breach thereof, failure to allege that GSUIG or Webster Bank had the specific intention to procure a breach, and failure to allege that GSUIG or Webster Bank proximately caused such a breach.

Accordingly, Plaintiffs have failed to plead a cause of action for tortious interference with a contract against GSUIG, Webster Bank, and BFC, and this claim must be dismissed.

### F.  The Civil Conspiracy to Breach a Fiduciary Duty and to Breach a Contract Claims against GSUIG, Webster Bank, BFC, and EOM

In support of their claims for civil conspiracy to breach a fiduciary duty and to breach a contract, Plaintiffs contend that the Defendants formed a conspiracy to breach EOM's its fiduciary duties to Plaintiffs and its obligations under the Operating Agreement, unlawfully or by unlawful means.  *See* Dkt. No. 34 ¶¶ 76-77, 83.  Specifically, Plaintiffs allege Defendants conspired to "reckless[ly] waste [] more than $75 million in EB-5 Investors' money, including at least $7 million of Plaintiffs' monies[,]" and had a meeting of the minds in the negotiation of the 2019

Subordination Agreement, which resulted in violations of Operating Agreement Sections 4.5 (Duties of Manager) and 5.5 (Management Fee), "insofar as EOM continued to collect any Management Fees subsequent to entry into the 2019 Subordination Agreement[.]" *Id.* ¶¶ 78-80, 84-68. Plaintiffs further allege that Defendants "acted with the full knowledge and awareness" that through the execution of the 2019 Subordination Agreement, they would "eliminate any chance of the EB-5 Investors'" recovery while EOM collected its management fee and the Senior Lenders collected 20% interest on the Senior Loans. *Id.* ¶ 79.

Defendants contend that Plaintiffs' claims for civil conspiracy to breach a fiduciary duty and to breach a contract should be dismissed on the grounds that Plaintiffs fail to plead an underlying tort; that Plaintiffs do not plead an agreement, sufficient over acts in furtherance of the conspiracy, or scienter; and that the claims are duplicative of Plaintiffs' tort claims. *See* Dkt. Nos. 41 at 16-17; 44 at 36-37.

### 1.    Applicable Law

New York law dictates that civil conspiracy is not an independent tort, but a theory under which a party can establish the vicarious liability of co-conspirators for each other's offenses. *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011); *Green v. Beer*, No. 6-CV-4156 (KMW) (JCF), 2009 WL 911015, at *1 n.1 (S.D.N.Y. Mar. 30, 2009) ("[U]nder New York law, there is no independent action for civil conspiracy. Instead, civil conspiracy is a theory of vicarious liability pursuant to which defendants can be held liable for the fraudulent actions of their co-conspirators.") (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 237 (2d Cir. 2006)). Accordingly, "in order to adequately plead a claim for civil conspiracy, a plaintiff must establish first the underlying tort that the parties have conspired to commit." *Marino*, 810 F. Supp. 2d at 610.

"Once the underlying tort is established and deemed sufficiently supported by factual allegations, a plaintiff must establish: '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Id*. (citing *Meisel*, 651 F. Supp. 2d at 119); *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532-33 (S.D.N.Y. 2001). "Claims of civil conspiracy which do not allege, or which insufficiently allege, an underlying tort must be dismissed for failure to state a claim under Rule 12(b)(6)." *Id*. (citing *Meisel*, 651 F. Supp. 2d at 119). Indeed, "[a] claim for civil conspiracy is only actionable if the complaint states a claim for the underlying tort." *Corbett v. eHome Credit Corp*., No. 10-CV-26 (JG) (RLM), 2010 WL 1063702, at *3 n.5 (E.D.N.Y. Mar. 22, 2010) (citing *Kirch v. Liberty Media Corp*., 449 F.3d 388, 401 (2d Cir. 2006)).

## 2.    Application

As discussed *supra*, Plaintiffs have failed to allege facts sufficient to support causes of action for breach of contract or breach of fiduciary duty against EOM. *See* Sections III.B.-C. Accordingly, because the underlying claims of breach of contract of breach of fiduciary duty and the claims for civil conspiracy "must stand or fall together, the civil conspiracy claim is likewise dismissed." *Marino*, 810 F. Supp. 2d at 611 (citing *Filler v. Hanvit Bank*, 156 Fed. App'x 413, 418 (2d Cir. 2005) ("A claim of conspiracy cannot stand alone and must be dismissed if the underlying independent tort has not been adequately pleaded.")); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc*., 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009).

Additionally, Plaintiffs have not adequately alleged an agreement among Defendants or sufficient overt acts in furtherance of the conspiracy to sustain their causes of action for civil conspiracy to breach a fiduciary duty and to breach a contract. *See Donini Int'l, S.p.A. v. Satec*

*(U.S.A.) LLC*, 2004 WL 1574645, at *3 (S.D.N.Y. July 13, 2004) ("Conclusory claims of conspiracy that are not pleaded with sufficient factual grounding should be dismissed."); *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2015 WL 5521769, at *11 (Sept. 17, 2015) (dismissing civil conspiracy claim where "[p]laintiff has not pled any facts" from which "a reasonable inference" can be made "that the Defendants 'knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose.'") (citation omitted).

As discussed above, it was not necessary for EOM to advise Plaintiffs of the decision to enter into the 2019 Subordination Agreement because of the extensive and exclusive authority to unilaterally act conferred by the Operating Agreement. *See* Section III.B. Accordingly, allegations regarding Plaintiffs' lack of consent to EOM's execution of the 2019 Subordination Agreement, and GSUIG, Webster Bank, or BFC's alleged knowledge thereof do not properly form the basis of a conspiracy claim. Further, claims that the actions of GSUIG or Webster Bank committed an overt act regarding EOM's execution of the 2019 Subordination Agreement are conclusory and lack sufficient detail to substantiate a civil conspiracy claim. *See DDR Const. Servs., Inc. v. Siemens Indus., Inc.,* 770 F. Supp. 2d 627, 660 (S.D.N.Y. 2011) (dismissing civil conspiracy claim where "[t]he complaint does not state any facts indicating the what, when, where, and how of the conspiracy[.]").

Even assuming, however, that Plaintiffs adequately pleaded the underlying torts of breach of contract or breach of fiduciary duty against EOM, their conspiracy claims would also be subject to dismissal for being duplicative of other of Plaintiffs' claims, such as aiding and abetting a breach of fiduciary duty and tortious interference with a contract. *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 339-40 (S.D.N.Y. 2024) ("[W]here the acts underlying a claim of conspiracy are the same as those underlying other claims alleged in the complaint, the

conspiracy claim is dismissed as duplicative."); *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, No. 12-CV-3723 (RJS), 2016 WL 5719749, at *7 (S.D.N.Y. Sept. 29, 2016) ("[A] cause of action for civil conspiracy that offers no new allegations beyond those alleged in support of other tort claims alleged elsewhere must be dismissed as duplicative.") (internal quotation marks omitted)).

Plaintiffs' claims for civil conspiracy to breach a fiduciary duty and to breach a contract concern the same principal conduct of Defendants as in their claims for aiding and abetting a breach of fiduciary duty and tortious interference with a contract (and the remainder of their claims), to wit: that Defendants worked in concert to occasion EOM to violate its fiduciary duties to Plaintiffs and breach the Operating Agreement through execution of the 2019 Subordination Agreement, thereby so subordinating Plaintiffs' debt as to foreclose any path to recovery on their investments and otherwise squandering their capital. *See generally*, Dkt. No. 34. These and other of Plaintiffs' allegations show the similarity of their claims for civil conspiracy to breach a fiduciary duty and to breach a contract with their claims for aiding and abetting a breach of fiduciary duty and tortious interference with a contract. Accordingly, Plaintiffs' causes of action for civil conspiracy are duplicative and subject to dismissal. *See AT&T Corp.*, 714 F. Supp. at 340 ("Though there are differences in the wording, the allegations are the same as those underlying [the] claims for aiding and abetting breach of fiduciary duty and tortious interference with contract."); *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99-CV-9623 (RWS), 2007 WL 1040809, at *26 (S.D.N.Y. April 4, 2007) ("Here, Plaintiffs' alleged overt acts in support of the conspiracy claim are essentially the same alleged acts that form the basis of the aiding and abetting claim. Therefore, [the] First Cause of Action (conspiracy) is duplicative of the Second Cause of Action (aiding and abetting)"), *aff'd sub nom. Briarpatch Ltd. LP v. Phoenix Pictures, Inc.*, 312 F.

App'x 433 (2d Cir. 2009)); *Loreley*, 2016 WL 5719749, at *7 ("[A] cause of action for civil conspiracy that offers no new allegations beyond those alleged in support of other tort claims alleged elsewhere must be dismissed as duplicative.") (internal quotation marks omitted)).

Additionally, "'[i]n order to sustain an allegation of civil conspiracy that involves a conspiracy to breach a fiduciary duty, all members of the alleged conspiracy must independently owe a fiduciary duty to the plaintiff.'" *Briarpatch Ltd. L.P.*, 2007 WL 1040809, at *26 (quoting *Pope v. Rice*, No. 04-CV-4171 (DLC), 2005 WL 613085, at *13 (S.D.N.Y. March 14, 2005)). Here, Plaintiffs have not pleaded that any Defendant besides EOM owed them fiduciary duties, *see generally*, Dkt. No. 34, which constitutes independent grounds to dismiss Plaintiffs' civil conspiracy to breach a fiduciary duty claim as against GSUIG, Webster Bank, and BFC.

Accordingly, Plaintiffs have failed to plead a cause of action for civil conspiracy to breach a fiduciary duty and to breach a contract against all Defendants and these claims must be dismissed.

### G.    Unjust Enrichment as against EOM

In support of their claim of unjust enrichment against EOM, Plaintiffs argue that EOM was unjustly enriched through its collection of the 3% management fee once EOM allegedly breached the Operating Agreement by entering the 2019 Subordination Agreement. *See id*. ¶ 90. Plaintiffs concede that EOM was entitled to collect the 3% annual management fee of the "total outstanding amount owed under the EB-5 Loans." *Id*. ¶ 89-90. Plaintiffs, however, allege that once the 2019 Subordination Agreement was signed, the management fee received by EOM was "improper and should have been reserved for repayment of Plaintiffs' investments in the EB-5 Loan." *Id*. at ¶ 90. Plaintiffs claim that "[a]s a result EOM has been unjustly enriched while violating its fiduciary duties to the EB-5 investors." *Id*. ¶ 91. Plaintiffs seek the "disgorgement and return of these funds." *Id*. ¶ 93.

EOM seeks dismissal of the unjust enrichment claim on multiple grounds. Dkt. No 44 at 39. First, EOM argues that Plaintiffs' unjust enrichment claim is duplicative of Plaintiffs' breach of contract claim against EOM. *Id.* EOM argues that the two claims are "predicated on the same facts" and therefore, Plaintiffs are precluded from recovering on both claims. *Id.* at 39-40. EOM also argues that Plaintiffs' unjust enrichment claim must fail because the management fee was an agreed-upon term of the Operating Agreement and Plaintiffs knew that the fee would be paid "independent of whether Plaintiffs' investment was returned." *Id.* at 40. Plaintiffs maintain that their unjust enrichment claim arises out of different facts than their breach of contract claim. *See* Dkt. No. 45 at 30).

### 1.  Applicable Law

Under New York law, to prevail on an unjust enrichment claim, "a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Generally, "the existence of a valid contract renders unjust enrichment [] unavailable as a remedy." *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430 (S.D.N.Y. 2020) (collecting cases). This is because unjust enrichment claim is quasi-contract claim, meaning "it is an obligation the law creates *in the absence of any agreement.*" *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (emphasis in original) (quoting *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742 (N.Y. 2005)).

It is permissible for a plaintiff to plead both breach of contract and unjust enrichment claims, however, such claims must typically be pleaded in the alterative. *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09-CV-3980 (DLC), 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009), *aff'd*, 396 F. App'x 736 (2d Cir. 2010) (citations omitted) ("Unjust enrichment may be

[pleaded] in the alternative where the plaintiff challenges the validity of the contract; it may not be [pleaded] in the alternative alongside a claim that the defendant breached an enforceable contract."). Plaintiffs may be able to plead both unjust enrichment and breach of contract as alterative theories for the overlapping factual allegations, but only if there is a genuine dispute as to the validity of the contract in question. *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014) ("While plaintiffs' unjust enrichment claim is derived from the same set of facts as plaintiffs' breach of contract claim, plaintiffs may plead alternative theories of liability at this stage because [defendant] disputes the existence of an agreement.). The threshold question for courts to consider in determining whether both claims can be pleaded together is "whether an enforceable contract exists that governs the subject matter underlying the unjust enrichment claim." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010).

### 2.    Application

As a preliminary manner, Plaintiffs do not argue that a valid and enforceable agreement did not exist between them and EOM. Dkt. No. 34 ¶ 19. To the contrary, Plaintiffs agree that the Operating Agreement provided for a 3% management fee paid quarterly to EOM and that EOM was entitled to the same prior to execution of the 2019 Subordination Agreement. *Id.* at ¶ 18. Because the basis of Plaintiffs' unjust enrichment claims revolves around the continued payment of the management fee to EOM after the 2019 Subordination Agreement, *see id.* at ¶ 90, it is clear that the subject matter of the claim is covered by Operating Agreement. On these grounds alone, Plaintiffs' unjust enrichment claim should be dismissed as duplicative of their breach of contract claim. *See Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 683 (S.D.N.Y. 2015)

(dismissing unjust enrichment claim because the factual allegations underlying the claim were covered in the contracts between the parties, which were not alleged to be invalid).

Plaintiffs assert that their unjust enrichment claim is factually distinct from their breach of contract claim because the unjust enrichment claim specifically seeks damages related to the management fees.  Dkt. No. 45 at 29-30.  Both claims, however, still concern the content of the Operating Agreement.  Indeed, while the exact text of Plaintiffs' breach of contract claim, Dkt. No. 34 ¶¶ 61-68, differs from that of their unjust enrichment claim, *id*. ¶¶ 88-93, each claim is predicated on EOM's alleged breach of the Operating Agreement by entering the 2019 Subordination Agreement.  *Compare id*. ¶ 90 *with* Dkt. Nos. 45 at 17; 46 at 19.  Because the alleged conduct—collecting the management fee and entering into the 2019 Subordination Agreement— is the same in both the breach of contract and unjust enrichment claims, *see* Dkt. No. 46 at 19, and the claims arise from a valid, enforceable contract, the unjust enrichment claim must be dismissed. *See Goldman*, 5 N.Y.3d at 572; *Black v. Wrigley*, No. 21-2553, 2023 WL 2591014, at *5 (2d Cir. Mar. 22, 2023).

Plaintiffs argue that it is possible to plead both the breach of contract and unjust enrichment claims as alternative theories of liability.  *See* Dkt. No 45 at 29.  Plaintiffs, however, do not indicate in their Amended Complaint that they are doing so, and in their briefing attempt to assert that their breach of contract and unjust enrichment claims are distinct and with separate factual bases.  *See* Dkt. Nos. 34, 45 at 29-30.  Plaintiffs' failure to sufficiently plead unjust enrichment and breach of contract allegations in the alternative is also grounds for dismissal of their unjust enrichment claim. *See Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC*, No. 16-CV-3181 (RPK) (CLP), 2020 WL 7042642, at *12 (E.D.N.Y. Nov. 30, 2020) (dismissing unjust enrichment claim

where the plaintiff did not plead it in the alternative or otherwise question the validity of the contract).

Moreover, pleading unjust enrichment and breach of contract in the alternative can only occur if there is a genuine dispute as to the validity of the underlying agreement. Here, Plaintiffs do not argue that the contract between Plaintiffs and EOM is invalid; rather they argue that EOM's conduct in signing the 2019 Subordination violated the Operating Agreement and EOM's fiduciary duties to Plaintiffs. *See* Dkt. No 34 ¶¶ 49-55, 61-68. Inherent in this argument is Plaintiffs' concession that there is no dispute as to the existence or validity of the contract. Thus, as Plaintiffs do not successfully plead unjust enrichment as an alternative theory to their breach of contract claims, the unjust enrichment claim is duplicative of the breach of contract claim and must be dismissed. *See Hanover Specialties, Inc. v. Les Revêtements Polyval Inc.*, No. 19-CV-3732 (KAM) (CLP), 2021 WL 964970, at *10 (E.D.N.Y. Mar. 15, 2021) (dismissing plaintiff's unjust enrichment claims that were plead in the alterative to the breach of contract claims as duplicative because there was no genuine dispute as to the validity of the contract.).

Finally, Plaintiffs' unjust enrichment claim fails because Plaintiffs have failed to plead facts indicating "'equity and good conscience' require restitution." *Kaye*, 202 F.3d at 616; *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 119 (S.D.N.Y. 2023) ("The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.") (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)).

As discussed above, EOM's actions in entering into the 2019 Subordination Agreement did not constitute wrongful action or a breach of its fiduciary duty to Plaintiffs, nor a breach of an express term or implied covenant of the Operating Agreement. *See* Section III.B-C. Indeed, as

EOM states, "while specific conditions surround payment of EOM's management fee, Plaintiffs do not allege that EOM violated those terms." Dkt. No. 44 at 40. Thus, there is no basis for arguing that EOM's retention of its 3% management fee is "against equity and good conscience" and constitutes unjust enrichment. *See Caro Cap.*, 653 F. Supp. 3d at 119 (quoting *Mandarin*, 16 N.Y.3d at 182).

Accordingly, because Plaintiffs have failed to adequately plead a sufficient cause of action for unjust enrichment against EOM, this claim must be dismissed.

### H.    Statute of Limitations

Neither party addressed the applicable statutes of limitations in their briefs. As a result, any arguments by Defendants regarding timeliness have effectively been waived. *See U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694 (KMK), 2024 WL 3159846, at *2 n.2 (S.D.N.Y. June 25, 2024) ("Issues not sufficiently argued in the briefs are considered waived") (citation omitted); *see also Piotrowski v. Rocky Point Union Free Sch. Dist.*, No. 18-CV-6262 (RPK), 2023 WL 2710341, at *13 (E.D.N.Y. Mar. 30, 2023) (holding, where the party had only made passing references to its argument in its briefing, that the party's argument was "so underdeveloped that the [c]ourt deem[ed] it waived." (citation omitted)).

Nevertheless, "a court may raise a statute of limitations defense *sua sponte* when the facts supporting the statute of limitations defense are set forth in the papers plaintiff[s] [themselves] submitted." *Cucul v. Major Cleaning, Inc.*, No. 22-CV-601 (KAM), 2024 WL 2783505, at *6 (E.D.N.Y. May 30, 2024) (alteration adopted) (italics, quotation marks, and citation omitted); *see also Kone v. Joy Constr. Corp.*, No. 15-CV-1328 (LTS), 2016 WL 866349, at *2 (S.D.N.Y. Mar. 3, 2016) (noting that "dismissal on statute of limitations grounds is proper only where a complaint plainly appears time-barred on its face") (citation omitted). The Court ordered additional written

submissions related to, *inter alia*, the statute of limitations issue, which the parties subsequently filed.[7]  *See* Dkt. Nos. 49-52.

Given the procedural posture, the Court need not address whether Plaintiffs' claims are timely, as dismissal is warranted on other grounds.  But the Court notes that Plaintiffs' cause of action for unjust enrichment is independently subject to dismissal as time-barred.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co*., 12 N.Y.3d 132, 139 (2009) ("Where the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR § 214."); *see also Ingrami v. Rovner*, 45 A.D.3d 806, 808 (2d Dep't 2007) (applying three-year statute of limitations to unjust enrichment claim because plaintiff sought monetary, as opposed to equitable, relief).

Here, because Plaintiffs allege that EOM was unjustly enriched when it collected its 3% management fee after execution of the 2019 Subordination Agreement, *see* Dkt. No. 34 ¶ 90, Plaintiffs' cause of action for unjust enrichment therefore accrued on or about March 4, 2019 and was thus time-barred on or about March 4, 2022.

Accordingly, Plaintiffs' claim for unjust enrichment is independently subject to dismissal on timeliness grounds.

## IV.   Conclusion

For the reasons set forth above, the undersigned grants Defendants' motions to dismiss.

Dated:       Brooklyn, New York
             August 21, 2025

                                        **SO ORDERED.**

                                         */s/ Joseph A. Marutollo*
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge

---

[7] As dismissal is warranted on other grounds, the Court need not address the parties' arguments in their supplemental letters regarding *res judicata*.  *See* Dkt. Nos. 49-52.

APPEAL,ACO,DECLINED−CONSENT,MEDSNR,MJI

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:24−cv−04234−RER−JAM

| | |
|---|---|
| Gan et al v. GSUIG Real Estate Member LLC et al | Date Filed: 06/14/2024 |
| Assigned to: Judge Ramon E. Reyes, Jr | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Joseph A. Marutollo | Nature of Suit: 190 Contract: Other |
| Demand: $7,000,000,000 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity−Breach of Fiduciary Duty | |

**Mediator**

**Joseph DiBenedetto**

**Plaintiff**

**Lihua Gan**                                   represented by   **Matthew J Livingston**
Reid & Wise LLC
1 Penn Plaza
Suite 2015
Suite 2015
New York, NY 10119
814−746−1650
Email: mlivingston@reidwise.com
*ATTORNEY TO BE NOTICED*

**Matthew Joel Sava**
Reid & Wise LLC
One Penn Plaza
Suite 2015
New York, NY 10119
212−858−9968
Fax: 516−821−8978
Email: sava@reidwise.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Pu Gao**                                      represented by   **Matthew J Livingston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Joel Sava**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Yashu Li**                                    represented by   **Matthew J Livingston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Joel Sava**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ruimin Liu**                                  represented by   **Matthew J Livingston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Joel Sava**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tang Na**                                        represented by   **Matthew J Livingston**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Matthew Joel Sava**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wang Kaiqin**                                    represented by   **Matthew J Livingston**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Matthew Joel Sava**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Waishan Wen**                                    represented by   **Matthew J Livingston**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Matthew Joel Sava**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Xingqin Wen**                                    represented by   **Matthew J Livingston**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Matthew Joel Sava**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dong Yan**                                       represented by   **Matthew J Livingston**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Matthew Joel Sava**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Siyun Yan**                                      represented by   **Matthew J Livingston**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Matthew Joel Sava**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Xinlin Yang**                                    represented by   **Matthew J Livingston**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Matthew Joel Sava**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jinchun Li**                     represented by   **Matthew J Livingston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Joel Sava**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Guoyong Ma**                     represented by   **Matthew J Livingston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Joel Sava**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lijuan Yang**                     represented by   **Matthew J Livingston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Joel Sava**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**GSUIG Real Estate Member LLC**    represented by   **Gregory Wang**
Sidley Austin LLP
787 7th Ave.
New York, NY 10019
212–839–8690
Email: greg.wang@sidley.com
*ATTORNEY TO BE NOTICED*

**John J. Kuster**
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
212–839–5300
Fax: 212–839–5599
Email: jkuster@sidley.com
*ATTORNEY TO BE NOTICED*

**Peter J. Mardian**
Sidley Austin LLP
787 Seventh Ave.
New York, NY 10019
212–839–5300
Fax: 212–839–5599
Email: pmardian@sidley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Webster Bank N.A.**               represented by

**Elizabeth S Sy**
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556
516−357−3000
Email: elizabeth.sy@rivkin.com
*ATTORNEY TO BE NOTICED*

**Michael J. Heller**
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556
516−357−3000
Email: michael.heller@rivkin.com
*ATTORNEY TO BE NOTICED*

**Michelle Ann Klein**
Rivkin Radler LLP
926 Rxr Plaza
Uniondale, NY 11556
516−357−3000
Fax: 516−357−3333
Email: michelle.klein@rivkin.com
*ATTORNEY TO BE NOTICED*

**Stuart I. Gordon**
Rivkin Radler LLP
926 Reckson Plaza
Uniondale, NY 11556
516−357−3000
Fax: 516−357−3333
Email: stuart.gordon@rivkin.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Empire Outlet Management, LLC**     represented by **Joseph B. Schmit**
Phillips Lytle LLP
620 8th Avenue
38th Floor
New York, NY 10018
212−759−4888
Fax: 212−308−9079
Email: jschmit@phillipslytle.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paige C Goldberg**
Phillips Lytle LLP
620 8th Avenue
Ste 38th FL
New York City, NY 10018
212−508−0438
Email: pgoldberg@phillipslytle.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**BFC Partners, LLC**     represented by **Andrew Vincent Achiron**
Silverman Shin & Schneider PLLC
Wall Street Plaza
88 Pine Street, 22nd Floor
10005
New York, NY 10005
212−779−8600
Fax: 212−779−8858

Email: aachiron@silverfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald F. Schneider**
Silverman Shin & Byrne PLLC
88 Pine Street
22nd floor
New York, NY 10005
212–779–8600
Fax: 212–779–8858
Email: dschneider@silverfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/14/2024 | 1 | COMPLAINT against All Defendants filing fee $ 405, receipt number ANYEDC–17978432 Was the Disclosure Statement on Civil Cover Sheet completed –YES,, filed by Waishan Wen, Yashu Li, Guoyong Ma, Lihua Gan, Lijuan Yang, Dong Yan, Jinchun Li, Pu Gao, Tang Na, Xingqin Wen, Siyun Yan, Xinlin Yang, Ruimin Liu, Wang Kaiqin. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Civil Cover Sheet) (Sava, Matthew) (Entered: 06/14/2024) |
| 06/14/2024 |  | Your proposed summons was not issued for one of the following reasons: **No summons provided, please submit summons. The event can be found under the event Other Documents – Proposed Summons/Civil Cover Sheet.,** <br><br> Please correct and resubmit using Proposed Summons/Civil Cover Sheet. (SDM) (Entered: 06/14/2024) |
| 06/14/2024 | 2 | Clerks Notice Re: Consent. A magistrate judge has been assigned as the presiding judge in this case as part of a Pilot Program, governed by EDNY Administrative Order 2023–23. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. The form is also available here: https://www.nyed.uscourts.gov/edny–direct–assignment–pilot–program. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent. Unless all parties consent to the Magistrate Judge jurisdiction by the deadline set forth in the Administrative Order 2023–23, a District Judge will be assigned to the case. The parties are directed to review the terms of Administrative Order 2023–23 and other materials related to the Pilot Program on the Courts website: https://www.nyed.uscourts.gov/edny–direct–assignment–pilot–program. (SDM) (Entered: 06/14/2024) |
| 06/14/2024 | 3 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (SDM) (Entered: 06/14/2024) |
| 06/14/2024 | 4 | SCHEDULING ORDER: A telephonic initial conference will be held on August 2, 2024 at 11:30 a.m. before Magistrate Judge Joseph A. Marutollo. To participate in the conference, the parties shall dial (646) 828–7666; Meeting ID: 161 562 2065; Passcode: 149342. The parties must complete the attached proposed Discovery Plan and Scheduling Order and file it on ECF no later than July 28, 2024. Plaintiff is directed to ensure that all Defendants are aware of this conference. Counsel with knowledge of the case must attend the conference; per diem counsel may not appear without prior permission of the Court. The parties are directed to review this Court's Individual Practices and Rules in advance of the conference Ordered by Magistrate Judge Joseph A. Marutollo on 6/14/2024. (Attachments: # 1 Individual Practices and Rules) (EG) (Entered: 06/14/2024) |

| 06/14/2024 | 5 | Proposed Summons. by Lihua Gan, Pu Gao, Wang Kaiqin, Jinchun Li, Yashu Li, Ruimin Liu, Guoyong Ma, Tang Na, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Lijuan Yang, Xinlin Yang (Attachments: # 1 Proposed Summons, # 2 Proposed Summons, # 3 Proposed Summons) (Sava, Matthew) (Entered: 06/14/2024) |
|---|---|---|
| 06/17/2024 | 6 | Summons Issued as to All Defendants. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons) (MB) (Entered: 06/17/2024) |
| 07/23/2024 | 7 | NOTICE of Appearance by Elizabeth S Sy on behalf of Webster Bank N.A. (aty to be noticed) (Sy, Elizabeth) (Entered: 07/23/2024) |
| 07/23/2024 | 8 | NOTICE of Appearance by Michelle Ann Klein on behalf of Webster Bank N.A. (aty to be noticed) (Klein, Michelle) (Entered: 07/23/2024) |
| 07/23/2024 | 9 | Letter MOTION to Adjourn Conference *scheduled for Aug. 2, 2024*, Letter MOTION for Extension of Time to File *Discovery Plan and Scheduling Order* by Webster Bank N.A.. (Klein, Michelle) (Entered: 07/23/2024) |
| 07/23/2024 | | ORDER granting 9 . Defendant Webster Bank, N.A. f/k/a Sterling National Bank's deadline to respond to the Complaint is extended until August 14, 2024. The initial conference is rescheduled to August 20, 2024 at 4:30 p.m. To participate in the conference, the parties shall dial (646) 828–7666; Meeting ID: 161 562 2065; Passcode: 149342. The deadline to file the proposed discovery plan is extended until August 14, 2024. Ordered by Magistrate Judge Joseph A. Marutollo on 7/23/2024. (EG) (Entered: 07/23/2024) |
| 07/24/2024 | 10 | NOTICE of Appearance by John J. Kuster on behalf of GSUIG Real Estate Member LLC (aty to be noticed) (Kuster, John) (Entered: 07/24/2024) |
| 07/24/2024 | 11 | NOTICE of Appearance by Peter J. Mardian on behalf of GSUIG Real Estate Member LLC (aty to be noticed) (Mardian, Peter) (Entered: 07/24/2024) |
| 07/24/2024 | 12 | NOTICE of Appearance by Gregory Wang on behalf of GSUIG Real Estate Member LLC (aty to be noticed) (Wang, Gregory) (Entered: 07/24/2024) |
| 07/24/2024 | 13 | Corporate Disclosure Statement by GSUIG Real Estate Member LLC identifying Corporate Parent The Goldman Sachs Group, Inc. for GSUIG Real Estate Member LLC. (Kuster, John) (Entered: 07/24/2024) |
| 07/24/2024 | 14 | Letter *re District Judge* by GSUIG Real Estate Member LLC (Kuster, John) (Entered: 07/24/2024) |
| 07/24/2024 | | NOTICE to Assign District Judge: The Clerk of Court is directed to reassign this case to a district judge. (EG) (Entered: 07/24/2024) |
| 07/24/2024 | | Case Reassigned to Judge Ramon E. Reyes, Jr and Magistrate Judge Joseph A. Marutollo. Magistrate Judge Joseph A. Marutollo no longer assigned as presider to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (DA) (Entered: 07/24/2024) |
| 07/24/2024 | 15 | NOTICE of Appearance by Michael J. Heller on behalf of Webster Bank N.A. (aty to be noticed) (Heller, Michael) (Entered: 07/24/2024) |
| 07/24/2024 | 16 | NOTICE of Appearance by Stuart I. Gordon on behalf of Webster Bank N.A. (aty to be noticed) (Gordon, Stuart) (Entered: 07/24/2024) |
| 07/25/2024 | 17 | Letter MOTION for Extension of Time to File *Pre−Motion Conference Letter* by Webster Bank N.A.. (Klein, Michelle) (Entered: 07/25/2024) |
| 07/25/2024 | | ORDER granting 17 Defendant Webster Bank N.A.'s Motion for Extension of Time to File a Pre−Motion Letter to August 14, 2024. Ordered by Judge Ramon E. Reyes, Jr. on 7/25/2024. (AH) (Entered: 07/25/2024) |
| 07/29/2024 | 18 | NOTICE of Appearance by Donald F. Schneider on behalf of BFC Partners, LLC (aty to be noticed) (Schneider, Donald) (Entered: 07/29/2024) |
| 07/29/2024 | 19 | NOTICE of Appearance by Andrew Vincent Achiron on behalf of BFC Partners, LLC (aty to be noticed) (Achiron, Andrew) (Entered: 07/29/2024) |

| 07/31/2024 | 20 | Letter MOTION for pre motion conference *regarding forthcoming motion to dismiss* by GSUIG Real Estate Member LLC. (Kuster, John) Modified on 8/21/2024 MOTION 20 REOPENED and referred to Magistrate Judge Joseph A. Marutollo (MV). (Entered: 07/31/2024) |
|---|---|---|
| 08/06/2024 | 21 | Corporate Disclosure Statement by BFC Partners, LLC (Schneider, Donald) (Entered: 08/06/2024) |
| 08/06/2024 | 22 | Letter *requesting leave to file a motion to dismiss the Complaint as against it* by BFC Partners, LLC (Schneider, Donald) Modified to add event type MOTION for pre motion conference on 8/15/2024 as per (RER) (MV). Modified on 8/21/2024 MOTION 22 REOPENED and referred to Magistrate Judge Joseph A. Marutollo (MV). (Entered: 08/06/2024) |
| 08/09/2024 | 23 | NOTICE of Appearance by Joseph B. Schmit on behalf of Empire Outlet Management, LLC (aty to be noticed) (Schmit, Joseph) (Entered: 08/09/2024) |
| 08/14/2024 | 24 | Letter MOTION for pre motion conference by Webster Bank N.A.. (Klein, Michelle) Modified on 8/21/2024 MOTION 24 REOPENED and referred to Magistrate Judge Joseph A. Marutollo (MV) (Entered: 08/14/2024) |
| 08/14/2024 | 25 | Corporate Disclosure Statement by Webster Bank N.A. identifying Corporate Parent Webster Financial Corporation, Other Affiliate Vanguard Group for Webster Bank N.A.. (Klein, Michelle) (Entered: 08/14/2024) |
| 08/14/2024 | 26 | Letter *re Consensual Stay of Discovery* by Lihua Gan, Pu Gao, Wang Kaiqin, Jinchun Li, Yashu Li, Ruimin Liu, Guoyong Ma, Tang Na, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Lijuan Yang, Xinlin Yang (Sava, Matthew) (Entered: 08/14/2024) |
| 08/14/2024 | | ORDER re 26 . Discovery is stayed pending the resolution of Defendant's anticipated motion to dismiss. The August 20, 2024 initial conference and corresponding August 14, 2024 deadline to submit a proposed discovery plan are adjourned sine die. All other deadlines remain the same. Ordered by Magistrate Judge Joseph A. Marutollo on 8/14/2024. (EG) (Entered: 08/14/2024) |
| 08/15/2024 | 27 | ORDER: The motions for pre−motion conferences ( 20 , 22 , and 24 ) are granted and respectfully referred to Magistrate Judge Marutollo. The parties are encouraged to consider consenting to Judge Marutollo's jurisdiction to decide the proposed motions, and are requested to meet and confer thereon prior to the pre−motion conference. Should all parties consent Judge Marutollo's jurisdiction to decide the motions, they are requested to file the attached consent form prior to the pre−motion conference. Ordered by Judge Ramon E. Reyes, Jr. on 8/15/2024. (AH) (Entered: 08/15/2024) |
| 08/15/2024 | | SCHEDULING ORDER: A pre−motion conference on Dkts. 20 , 22 , and 24 will be held on August 20, 2024 at 10:30 a.m. in Courtroom 324N before Magistrate Judge Joseph A. Marutollo. Ordered by Magistrate Judge Joseph A. Marutollo on 8/15/2024. (KAR) (Entered: 08/15/2024) |
| 08/16/2024 | 28 | Letter MOTION to Adjourn Conference by GSUIG Real Estate Member LLC. (Kuster, John) (Entered: 08/16/2024) |
| 08/16/2024 | | ORDER granting 28 – The pre−motion conference is rescheduled to August 22, 2024 at 9:30 a.m. in Courtroom 324 North before Magistrate Judge Marutollo. Ordered by Magistrate Judge Joseph A. Marutollo on 8/16/2024. (JAM) (Entered: 08/16/2024) |
| 08/20/2024 | 29 | NOTICE of Appearance by Matthew J Livingston on behalf of All Plaintiffs (aty to be noticed) (Livingston, Matthew) (Entered: 08/20/2024) |
| 08/21/2024 | 30 | Letter MOTION to Adjourn Conference by Lihua Gan, Pu Gao, Wang Kaiqin, Jinchun Li, Yashu Li, Ruimin Liu, Guoyong Ma, Tang Na, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Lijuan Yang, Xinlin Yang. (Livingston, Matthew) (Entered: 08/21/2024) |
| 08/21/2024 | | ORDER denying 30 . The pre−motion conference remains scheduled for August 22, 2024 at 9:30 a.m. The Court will discuss briefing schedules for the motions to dismiss at the conference. Ordered by Magistrate Judge Joseph A. Marutollo on 8/21/2024. (KAR) Modified on 8/21/2024 (JAM). (Entered: 08/21/2024) |

| 08/21/2024 | 31 | This a NOTICE, CONSENT, AND REFERENCE OF A DISPOSITIVE MOTION TO A MAGISTRATE JUDGE of this court to conduct all proceedings and enter a final order dispositive of each motion as to ECF Dkt. #'s [20,21,and 24] not CONSENT to Jurisdiction by US Magistrate Judge by GSUIG Real Estate Member LLC. (Kuster, John) Modified on 8/21/2024 (MV) (Entered: 08/21/2024) |
|---|---|---|
| 08/21/2024 | | ORDER granting 31 CONSENT AND REFERENCE OF A DISPOSITIVE MOTION to Magistrate Judge Joseph A. Marutollo. ORDER REFERRING MOTIONS to Magistrate Judge Joseph A. Marutollo for decision as to ECF Dkt. #'s 20 Letter MOTION for pre motion conference *regarding forthcoming motion to dismiss* filed by GSUIG Real Estate Member LLC, 22 MOTION for pre motion conference filed by BFC Partners, LLC, and 24 Letter MOTION for pre motion conference filed by Webster Bank N.A. Ordered by Judge Ramon E. Reyes, Jr on 8/21/2024. (MV) (Entered: 08/21/2024) |
| 08/21/2024 | | ORDER granting 24 – The proposed motion will be discussed at the August 22, 2024 conference at 9:30 a.m. The Court will discuss briefing schedules for the motions to dismiss at the conference. Ordered by Magistrate Judge Joseph A. Marutollo on 8/21/2024. (JAM) Modified on 8/21/2024 (JAM). (Entered: 08/21/2024) |
| 08/22/2024 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: A pre−motion conference was held on August 22, 2024 on 20 , 22 , and 24 . All counsel appeared. Defendant Empire Outlet Management, LLC ("EOM") shall respond to the complaint by September 5, 2024. As discussed on the record, EOM's response shall be a letter describing its anticipated motion. Plaintiff shall file an amended complaint by September 12, 2024.<br><br>All Defendants are granted leave to file their anticipated motions to dismiss. By September 19, 2024, Defendants shall file a joint letter indicating whether they intend to file an omnibus brief, and if so, propose page limits for their brief. The parties shall also discuss a proposed briefing schedule and include it in their letter. In the interim, the parties are encouraged to discuss settlement.<br><br>As discussed at the pre−motion conference, the parties are also encouraged to consider whether they wish to consent to magistrate judge jurisdiction over the entire case. The parties shall advise the Court whether they consent by August 29, 2024. The consent form is available here: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf. Any party may withhold its consent without adverse substantive consequences. (FTR Log #9:30−9:56.) (EG) (Entered: 08/22/2024) |
| 08/22/2024 | | ORDER terminating 20 and 22 – See August 22, 2024 minute entry of proceeding held before Magistrate Judge Marutollo. Ordered by Magistrate Judge Joseph A. Marutollo on 8/22/2024. (EG) (Entered: 08/22/2024) |
| 08/29/2024 | 32 | Letter *regarding not all parties consent to Court's jurisdiction in this action* by Webster Bank N.A. (Klein, Michelle) (Entered: 08/29/2024) |
| 09/05/2024 | 33 | Letter *Pre−Motion Letter* by Empire Outlet Management, LLC (Schmit, Joseph) (Entered: 09/05/2024) |
| 09/12/2024 | 34 | AMENDED COMPLAINT against All Defendants, filed by Waishan Wen, Yashu Li, Guoyong Ma, Lihua Gan, Lijuan Yang, Dong Yan, Jinchun Li, Pu Gao, Tang Na, Xingqin Wen, Siyun Yan, Xinlin Yang, Ruimin Liu, Wang Kaiqin. (Attachments: # 1 Exhibit Blackline) (Livingston, Matthew) (Entered: 09/12/2024) |
| 09/19/2024 | 35 | Letter *to Hon. Joseph A. Marutollo dated September 19, 2024 regarding Motion to Dismiss briefing* by GSUIG Real Estate Member LLC (Kuster, John) (Entered: 09/19/2024) |
| 09/19/2024 | | ORDER granting Dkt. No. 35 – The Court adopts the parties' proposed briefing schedule, as set forth in Dkt. No. 35 . The parties shall refrain from filing any briefs until the motion is fully briefed on January 15, 2025. By October 27, 2024, (i) GSUIG Real Estate Member LLC, Webster Bank N.A., and Empire Outlet Management, LLC, shall serve a joint motion to dismiss Plaintiffs' amended complaint (the "Joint Motion"), and (ii) BFC Partners, LLC intends shall serve its own separate motion to dismiss the amended complaint (the "Individual Motion"). By December 11, 2024, Plaintiff shall serve their opposition briefs to the Joint Motion and the Individual |

|  |  | Motion. By January 15, 2025, Defendants shall serve their reply briefs in support of the Joint Motion and the Individual Motion. Defendants shall file the fully–briefed motions by January 15, 2025. The Court approves the expanded page limits requested in the parties' September 19, 2024 letter.<br><br>The parties shall file a joint status report by October 28, 2024. In the joint status report, the parties shall advise whether they are amenable to Court–ordered mediation or a settlement conference. Ordered by Magistrate Judge Joseph A. Marutollo on 9/19/2024. (EG) (Entered: 09/19/2024) |
|---|---|---|
| 10/10/2024 | 36 | TRANSCRIPT of Proceedings held on August 22, 2024, before Judge Marutollo. Court Transcriber: Transcriptions Plus II, Inc.. Email address: RL.Transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request – Transcript" located under "Other Filings – Other Documents". Redaction Request due 10/31/2024. Redacted Transcript Deadline set for 11/11/2024. Release of Transcript Restriction set for 1/8/2025. (RC) (Entered: 10/10/2024) |
| 10/28/2024 | 37 | STATUS REPORT *Re: Potential Mediation or Settlement Conference* by Wang Kaiqin, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Xinlin Yang, Jinchun Li, Guoyong Ma, Lijuan Yang, Lihua Gan, Webster Bank N.A., Pu Gao, Yashu Li, Ruimin Liu, Tang Na (Livingston, Matthew) (Entered: 10/28/2024) |
| 10/29/2024 |  | SCHEDULING ORDER: The Court refers this case to EDNY's Court–annexed mediation program. Mediation shall be completed by January 31, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 10/29/2024. (JAM) (Entered: 10/29/2024) |
| 10/30/2024 |  | Case referred to mediation. Mediation shall be completed by 01/31/2025.Selection of Mediator due by 11/13/2024. (EG) (Entered: 10/30/2024) |
| 10/30/2024 |  | MEDIATION INSTRUCTIONS: Mediation instructions for counsel are available on the Court's website.<br><br>Counsel should select a mediator and schedule the initial mediation session with their chosen mediator. Once scheduled, counsel must file their selection using the Selection of Mediator Form. A list of EDNY Panel Mediators is available on the Court's website. EDNY Mediators are compensated in accordance with EDNY Mediators are compensated in accordance with Local Civil Rule 83.8(f)(1).<br><br>The Confidentiality Stipulation in–person or remote must be signed at or before the initial mediation session by all participants and the Mediator and returned via e–mail to nyed_adr@nyed.uscourts.gov.<br><br>Upon completion of the mediation, both parties must submit a Mediation Report to the ADR Department. (JR) (Entered: 10/30/2024) |
| 11/05/2024 | 38 | NOTICE of Appearance by Paige C Goldberg on behalf of Empire Outlet Management, LLC (aty to be noticed) (Goldberg, Paige) (Entered: 11/05/2024) |
| 11/13/2024 | 39 | Letter *re Selection of Mediator* by Wang Kaiqin, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Xinlin Yang, Jinchun Li, Guoyong Ma, Lijuan Yang, Lihua Gan, Pu Gao, Yashu Li, Ruimin Liu, Tang Na (Livingston, Matthew) (Entered: 11/13/2024) |
| 01/13/2025 | 40 | Letter MOTION to Adjourn Conference *(Mediation Deadline to April 15, 2025* by Webster Bank N.A.. (Klein, Michelle) (Entered: 01/13/2025) |
| 01/13/2025 |  | ORDER – granting 40. Mediation shall be completed by April 15, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 1/13/2025. (PCM) (EG) (Entered: 01/22/2025) |
| 01/15/2025 | 41 | MOTION to Dismiss for Failure to State a Claim by BFC Partners, LLC. (Attachments: # 1 Memorandum in Support, # 2 Memorandum in Opposition, # 3 Memorandum in Support Reply Memorandum of Law) (Schneider, Donald) (Entered: 01/15/2025) |

| | | |
|---|---|---|
| 01/15/2025 | 42 | MOTION to Dismiss for Failure to State a Claim *First Amended Complaint on behalf of GSUIG Real Estate Member LLC, Webster Bank, N.A. f/k/a Sterling National Bank, and Empire Outlet Management, LLC* by GSUIG Real Estate Member LLC. (Kuster, John) (Entered: 01/15/2025) |
| 01/15/2025 | 43 | AFFIDAVIT/DECLARATION in Support re 42 MOTION to Dismiss for Failure to State a Claim *First Amended Complaint on behalf of GSUIG Real Estate Member LLC, Webster Bank, N.A. f/k/a Sterling National Bank, and Empire Outlet Management, LLC* filed by GSUIG Real Estate Member LLC. (Attachments: # 1 Exhibit A – 2014 Subordination and Intercreditor Agreement, # 2 Exhibit B – EB–5 Lender's Private Placement Memorandum, # 3 Exhibit C – Subordinate Loan Servicing Agreement, # 4 Exhibit D – Decision and Order in Foreclosure Action, # 5 Exhibit E – Judgment in Foreclosure Action, # 6 Exhibit F – Referee's Report of Sale in Foreclosure Action) (Kuster, John) (Entered: 01/15/2025) |
| 01/15/2025 | 44 | MEMORANDUM in Support re 42 MOTION to Dismiss for Failure to State a Claim *First Amended Complaint on behalf of GSUIG Real Estate Member LLC, Webster Bank, N.A. f/k/a Sterling National Bank, and Empire Outlet Management, LLC* filed by GSUIG Real Estate Member LLC. (Kuster, John) (Entered: 01/15/2025) |
| 01/15/2025 | 45 | MEMORANDUM in Opposition re 42 MOTION to Dismiss for Failure to State a Claim *First Amended Complaint on behalf of GSUIG Real Estate Member LLC, Webster Bank, N.A. f/k/a Sterling National Bank, and Empire Outlet Management, LLC* filed by GSUIG Real Estate Member LLC. (Kuster, John) (Entered: 01/15/2025) |
| 01/15/2025 | 46 | REPLY in Support re 42 MOTION to Dismiss for Failure to State a Claim *First Amended Complaint on behalf of GSUIG Real Estate Member LLC, Webster Bank, N.A. f/k/a Sterling National Bank, and Empire Outlet Management, LLC* filed by GSUIG Real Estate Member LLC. (Kuster, John) (Entered: 01/15/2025) |
| 01/17/2025 | | SELECTION OF MEDIATOR Joseph DiBenedetto selected as Mediator. Date Time and Location in–person/remote: April 8, 2025 (remote). Fourteen days on or before the session date, counsel shall file with the Mediator their client's mediation statement summarizing the facts, legal issues, particulars of any prior settlement discussions, and the name and title of the client or client representative with full settlement authority who will attend the mediation. For more details on the submission, please consult Local Civil Rule 83.8(b)(4). Attendance is required of the trial attorney, insurance adjuster, and client or client representative with full settlement authority. The Confidentiality Stipulation (in–person or remote) must be signed at or before the initial mediation session by all participants and the Mediator and returned via e–mail to nyed_adr@nyed.uscourts.gov. The Mediators contact information can be found on the docket sheet. Within fourteen days of the conclusion of the mediation, both parties must submit a Mediation Report. (JR) (Entered: 01/17/2025) |
| 03/24/2025 | 47 | Letter *re Mediation Date Change* by Lihua Gan, Pu Gao, Wang Kaiqin, Jinchun Li, Yashu Li, Ruimin Liu, Guoyong Ma, Tang Na, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Lijuan Yang, Xinlin Yang (Livingston, Matthew) (Entered: 03/24/2025) |
| 03/24/2025 | | ORDER regarding 47 – The mediation deadline is extended until June 1, 2025. The parties shall file a joint status report by May 22, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 3/24/2025. (JAM) (Entered: 03/24/2025) |
| 05/22/2025 | 48 | STATUS REPORT *re: Mediation* by GSUIG Real Estate Member LLC (Kuster, John) (Entered: 05/22/2025) |
| 05/28/2025 | | REPORT of Mediation Unsettled. Both parties must submit a Mediation Report which can be found at: https://www.nyed.uscourts.gov/adr–forms. The Mediation Report must be submitted within two weeks following mediation session.Mediation Report due by 6/11/2025. (DS) (Entered: 05/28/2025) |
| 08/06/2025 | | ORDER – In connection with 41 and 42 , Defendants shall file a letter by August 8, 2025 indicating whether they argue that any of Plaintiffs' claims are barred by the statute of limitations or res judicata, with citations to applicable case law. Plaintiffs shall respond via letter by August 12, 2025, also with citations to applicable case law. Ordered by Magistrate Judge Joseph A. Marutollo on 8/6/2025. (EG) (Entered: 08/06/2025) |

| 08/08/2025 | <u>49</u> | Letter *in response to August 6, 2025 order re: statute of limitations or res judicata* by GSUIG Real Estate Member LLC, Webster Bank N.A. (Kuster, John) (Entered: 08/08/2025) |
|---|---|---|
| 08/08/2025 | <u>50</u> | Letter *in Response to August 6, 2025 Order* by Empire Outlet Management, LLC (Goldberg, Paige) (Entered: 08/08/2025) |
| 08/08/2025 | <u>51</u> | Letter *to Magistrate Judge Marutollo* by BFC Partners, LLC (Schneider, Donald) (Entered: 08/08/2025) |
| 08/12/2025 | <u>52</u> | Letter *in Response to August 6, 2025 Order* by Lihua Gan, Pu Gao, Wang Kaiqin, Jinchun Li, Yashu Li, Ruimin Liu, Guoyong Ma, Tang Na, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Lijuan Yang, Xinlin Yang (Livingston, Matthew) (Entered: 08/12/2025) |
| 08/21/2025 | <u>53</u> | MEMORANDUM AND ORDER – For the reasons stated in the attached Memorandum and Order, the Court GRANTS <u>41</u> and <u>42</u> , Defendants' motions to dismiss. Ordered by Magistrate Judge Joseph A. Marutollo on 8/21/2025. (EG)(PCM). (Entered: 08/21/2025) |
| 09/19/2025 | <u>54</u> | NOTICE OF APPEAL as to <u>53</u> Order on Motion to Dismiss for Failure to State a Claim,, Memorandum & Opinion by Lihua Gan, Pu Gao, Wang Kaiqin, Jinchun Li, Yashu Li, Ruimin Liu, Guoyong Ma, Tang Na, Waishan Wen, Xingqin Wen, Dong Yan, Siyun Yan, Lijuan Yang, Xinlin Yang. Filing fee $ 605, receipt number BNYEDC–19460660. Appeal Record due by 9/21/2026. (Attachments: # <u>1</u> Affidavit of Service, # <u>2</u> Exhibit) (Livingston, Matthew) (Entered: 09/19/2025) |